NORTH AMERICAN TRUST CO. *v.* FRANK B. LANIER ET AL.

1. HUSBAND AND WIFE. *Homestead. Wife's name forged. Code* 1892, § 1983.

A mortgage by a husband of his lands is valid as to that portion of the lands not constituting his homestead, although (without the knowledge of the mortgagee) he forged the signature of his wife thereto.

2. SAME. *Prior valid lien.*

A mortgage on his lands, including his homestead, given by a husband to secure in part a purchase money debt (itself a lien on the whole of the lands) and in part for money borrowed of the mortgagee, is valid and binds the lands, including the homestead, so far as it secures the previous purchase money debt, and binds the lands not the homestead for the borrowed money, although the wife's signature thereto was, without the knowledge of the mortgagee, forged by the husband.

3. SAME. *Subrogation.*

Where a husband forges his wife's name to a mortgage on lands, including his homestead, to secure borrowed money, the mortgagee being innocent, and a part of the money is used to pay off a purchase money debt secured by a vendor's lien on the whole land, the mortgagee who takes up and retains the note for the purchase money debt will be subrogated to the rights of the holder of the purchase money lien as against the homestead; for the balance of the loaned money, the mortgage is valid only on the lands constituting no part of the homestead.

4. CONVEYANCES. *Existing equities. Volunteer. Tax title.*

The grantee in a voluntary conveyance takes the land subject to all existing equities against his grantor, and cannot afterwards acquire the lands at or through a tax sale freed from such equities if the grantor could not have done so.

5. NOTICE.  *Fraud.   Statute of limitations.   Cause of action concealed. Filing of suit.   Code* 1892, §§ 2731, 2749.

   The mere filing of a bill in equity to cancel a deed to land before service of summons on or publication for a defendant who has no actual notice thereof, although a summons was served on an agent of said defendant not authorized to accept service of process, is not such constructive notice of the fraud charged in the bill as will put in operation against him the statute of limitations in cases of concealed frauds.

FROM the chancery court of Warren county.

HON. WILLIAM C. MARTIN, Chancellor.

The North American Trust Company, the appellant, was the complainant in the court below; Frank B. Lanier, his wife, Mary Emma, and others, appellees, were defendants there. The court below decreed in defendants' favor, and the complainant appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*Dabney & McCabe,* for appellant.

1. The court below erred in holding that the complainant had no title to the lands in controversy. The sale at which complainant purchased was made under the $2,100 note and deed of trust. It is true that Mrs. Lanier swears that she did not sign this note and deed of trust, and that they are both forgeries in so far as she is concerned. But in this respect she is not borne out by the evidence. Her evidence is contradicted by all of the record evidence which has been offered; it is contradicted by the official seal and certificates of at least two justices of the peace as to three separate and distinct acts; it is contradicted by at least four reputable and disinterested witnesses, and by all the probabilities of the case. The fact that she did not introduce her husband to testify that the signatures to this note and deed of trust were not hers, is a very suspicious circumstance. *Clifton* v. *United States,* 4 How. (U. S.), 246, s. c. 175 U. S., 204. She says she signed the bill in case No. 2282, which was clearly shown on the trial not to be the

case. She denies that John M. Shirwood, examiner for the loan company, ever visited the premises for the purpose of examining them. She denies that George U. Hirsh was ever at her house. She denies that she had any knowledge of the fact that the loan was being negotiated. Yet all these facts have been clearly established by the evidence of unimpeached and unimpeachable witnesses. It is impossible that the different facts proven in this case could have taken place and Mrs. Lanier not have known something about them.

2. But if mistaken in this view and the court should be of opinion that Mrs. Lanier did not sign the note and deed of trust for $2,100, then we insist that inasmuch as $1,000 of the proceeds of said note and deed of trust was applied by the Jarvis-Conklin Mortgage Trust Company to discharge another note and deed of trust for $1,000, which was a valid incumbrance upon the lands involved in this suit, executed by F. B. Lanier and M. E. Lanier, in favor of L. N. Buck, then the complainant, the vendee of the land and assignee of the note, as hereinbefore shown, is entitled to be subrogated to the rights of L. N. Buck under the $1,000 note and deed of trust, and has the right to a decree for the amount so paid, as prayed for in its original and amended bill.

The right of complainant to seek subrogation under the facts of this case is supported by the case of *Trust Company* v. *Peters*, 72 Miss., 1058. The fact that the $1,000 note and deed of trust was marked paid and canceled of record, does not affect complainant's right. Equity will declare that note and deed of trust to be alive, and will keep it alive in order to effectuate justice between the parties. *Trust Company* v. *Peters*, 72 Miss., 1058.

There is nothing in the contention that the right of subrogation is personal and not transferable or assignable. The right of subrogation is an incident of the debt and follows it. See *Bibb et al.* v. *Martin et al.*, 22 Miss., 93; *Bonner* v. *Lessley*, 61 Miss., 392; *Bank of England* v. *Tarleton*, 23 Miss., 173,

s.c. 3 Pa., 30, s.c. 8 Pa., 347; *Pierce* v. *Garrett*, 65 Ill. App., 682; *McQuie* v. *Peay*, 58 Mo., 56; *Landis* v. *York*, 65 N. C., 535; *Jordan* v. *Sayer*, Sup. Ct. Florida, March 26, 1892; *San Francisco Savings Union* v. *Long et al.*, Cal. Sup. Ct., July 1, 1898; 2 Jones on Mortgages, sec. 1087.

The right of subrogation may be likened to the vendor's lien where the same is reserved in the deed of conveyance. *Hobson* v. *Edwards*, 57 Miss., 128; *Mhoon* v. *Wilkerson*, 47 Miss., 634; *Foundry Co.* v. *Pascagoula Ice Co.*, 72 Miss., 608. Also to the mechanic's lien. *Kerr* v. *Moore*, 54 Miss., 286. Also to the laborer's lien, which is assignable in this state. It may be likened, also, to unassigned dower, which, though not vendible under a *fi. fa.*, is assignable by contract.

3. There is nothing in appellees' plea of the statute of limitations of six years. The appellees, having taken the title by gift and not by purchase, are pure, unadulterated volunteers, and, as such, cannot set up the statute of limitations. They cannot hold the land and plead the statute of limitations. *Barnett* v. *Nichols*, 56 Miss., 622. To allow them to do so would be to allow them to acquire valuable property at the expense of another, which a court of equity will not permit. *Clark* v. *Clark*, 58 Miss., 68.

But, if they are not estopped to plead the statute of limitations, the appellant is not barred by that statute. In cases of fraud the cause of action first accrues at, and not before, the time at which the fraud shall be, or with reasonable diligence might have been, first known or discovered. Code, §§ 2731, 2749, 2762.

Appellees do not claim actual notice of the fraud on the part of the appellant, but constructive notice. This notice, upon which they rely, consists of a bill in equity, No. 2282, on the docket of the chancery court of Warren county, filed in the name of Mrs. Lanier on June 3, 1892, against Beardsley & Gilbert, attacking the conveyance to Murray F. Smith and his conveyance to Beardsley & Gilbert, on the ground that her

husband or some one else had signed her name to the trust deed, and that her husband had got the money and used it for his own private ends and enjoyment. But Mrs. Lanier swears, as a witness now, that she knew nothing of the filing of that bill and never authorized it. The bill was not notice to Beardsley & Gilbert until service of notice on them or publication of notice to them as nonresidents or actual notice of the pendency of the suit, and of these facts there is no pretense of proof.

Murray F. Smith was not the attorney for Beardsley & Gilbert to receive notice of process for them, and if he agreed to answer the bill, that agreement was not notice to Beardsley & Gilbert and not binding on them. Besides, it is not shown that even he had notice within fourteen days after process issued in that suit, which was June 3, 1892, and unless he did have the notice within that time, six years had not elapsed when this suit was brought, and the appellant is not barred.

4. The doctrine of *caveat emptor* has no sort of application to this case. The appellees were volunteers, and as such cannot make that defense.

5. The tax titles set up by the appellees are all void for uncertainty in the description. But aside from this view of these tax titles, the appellees will not be allowed to set up the same against this appellant. They took title from F. B. Lanier by gift, and were amenable to all the equities which he would have been compelled to perform.

6. The appellees' claim of the homestead exemption to the lands sued for cannot be maintained as against the vendor's lien note of $500. Until this has been paid, with the interest, the right of a homestead in the property does not arise and cannot be claimed. We concede that if Mrs. Lanier did not sign the $2,100 note and deed of trust and the $500 note and deed of trust in favor of L. N. Buck, appellees will be entitled to a homestead in the property after the payment of the vendor's lien note, with interest. The result will be that we will

be entitled to a lien on the entire tract of 328 acres for $500, being the balance of the purchase money and a lien on the ex- -cess over the homestead for the other $500, with interest.

We respectfully submit that the case should be reversed and remanded, and should the court be of opinion that the appellee, M. E. Lanier, did not sign the $2,100 ote and deed of trust, that appellant be subrogated to all the rights and remedies of L. N. Buck under the $1,000 note and deed of trust, including the right of foreclosure; that an accounting be had thereon, and the amount due upon said note, with interest added at six per cent., be ascertained and a decree be entered foreclosing the same.

*Theodore McKnight*, for appellee.

By the pleadings it is admitted that the deed alleged to have been made by Beardsley to the Western Investment Company, December 13, 1891, was not recorded until June 29, 1896. Mrs. Lanier's suit was instituted June 3, 1892, and was pending March 1, 1897, at which time the deed from the Western Investment Company to the complainant bears date. Complainant took said deed with full knowledge of all the facts and surrounding circumstances, and of Mrs. Lanier's denial of the genuineness of the deed in trust claimed to be held by the Jarvis-Conklin Mortgage Company.

And it is further shown by the pleadings that at the time and place of the execution of the deed in trust (Exhibit " B "), or rather of its forgery, the agent of the Jarvis-Conklin Mort-gage Company was present and well knew that Mrs. Lanier was not present and had not signed the same, and, that said agent took part in the fraudulent scheme.

The tax deeds were dated March 2, 1891, and the defend-ants were in possession, claiming that they were entitled to hold under the conveyance from Gibson, which rests on these tax titles. Mrs. Lanier has been upon these lands since before

1890, and was on them on the first day of November, 1893, and she has been in possession of them for many years.

Complainants have themselves furnished a proper and sufficient description of the land; have alleged that the lands described by them are the same lands embraced in the improper description in the deed, and are the lands in dispute, and that the lands in dispute were sold for taxes, and have thereby relieved us of all trouble on account of description. *Mixon* v. *Clevenger*, 74 Miss., 67. They have alleged by their bill that appellees have been in possession and actual occupation of the lands for more than three years prior to the bringing of this suit; therefore, the tax title under which appellees have held the land, properly described in the bill, cannot be assailed by complainant for the reasons set forth in their pleadings. Code 1880, § 539; *Patterson* v. *Durfey*, 68 Miss., 779.

The rule is that the statute will run from the time the fraud is discovered, or might have been discovered by the exercise of reasonable diligence. 13 Am. & Eng. Enc. L., 730. And this record shows that more than six years before the bill in this cause was filed, Mrs. Lanier instituted her suit, in which she set out the forgeries. Any kind of diligence on the part of complainant or their privies in seeking possession of the land would have developed the fact that the sale was void as to Mrs. Lanier.

The company was a party to Mrs. Lanier's suit. Smith, the attorney of the company, agreed to file an answer, and therefore publication was not made for his client.

Mrs. Lanier, the owner of the land, did not sign the deed in trust of January 1, 1890, and the title to the land did not pass to Murray F. Smith under the sale made by W. A. Smith, trustee, not because of defect or invalidity in the sale, but because of the want of title in the trustee. There is here a failure of the title itself. The doctrine of *caveat emptor*, and not the doctrine of subrogation, applies. 22 Am. & Eng. Enc. L.

(2d ed.), 261, 262, note 1; *Pool* v. *Ellis*, 64 Miss., 555; *Mc-Gee* v. *Wallis*, 57 Miss., 638.

The cases of *Clark* v. *Wilson*, 56 Miss., 753, and *Bomer* v. *Lessley*, 61 Miss., 392, do not apply to a case like this where the true title to the land is never in the trustee at all, but to cases where the title is conveyed to the trustee by the deed in trust, but failed to pass from the trustee to the purchaser by virtue of some defect, not in the title, but in the sale.

Another reason why the doctrine of subrogation would not apply to the sale by W. A. Smith, trustee, to M. F. Smith is that the latter bid on the land for his clients, the Jarvis-Conklin Mortgage Trust Company, and not for himself. This company is charged in the answer and cross bill with knowledge of and participation in the perpetration of the forgery of Mrs. Lanier's name to the deed in trust, which is not denied.

Buck, when he bought the vendor's lien note, was acting as a volunteer and was under no obligations to buy in order to protect his own rights, because the land, as agreed before, was worth at that time $4,000, and was ample security for the $500 which he had loaned as an investment and for the $519 vendor's lien note. He did not take an assignment of the claim. He did not intend to keep alive the vendors' lien debt. His purpose and election were to extinguish this debt and put it in a different shape and make it payable at a different time and draw a different rate of interest, and there was no agreement that he should be subrogated to the rights of a vendor, and he says that he canceled and surrendered the same at the time he took the $1,000 note. Buck had a security of at least four to one for the first $500 loaned, and two to one for the money invested in paying off the vendor's lien note, in order, no doubt, to get full control of the debt on the place. There was no wrong done Mr. Buck such as to give him a right of subrogation which he could assign to the Jarvis-Conklin Mortgage Trust Company.

The Jarvis-Conklin Mortgage Trust Company have no right

of subrogation. They were doing what they did as a matter of speculation and were volunteers so far as paying off the $1,000 mortgage was concerned. They were in no way compelled to advance the money.

The right of subrogation is not analogous to a mechanic's lien, which is held to be assignable (*Kerr* v. *Moore*, 54 Miss., 286), nor to the laborer's lien, nor to dower, because all of these are creatures of contract under the statute. The right of subrogation is not a creature of contract, but simply of a court of equity, but is analogous to a vendor's lien before the enactment of the latter part of § 3503, code 1892. The right of subrogation, in the absence of a statute, is not assignable.

The right of subrogation differs from an assignment of a debt, in that the latter assumes the continued existence of the debt while the former follows only upon the payment of the debt. Sheldon on Subrogation, sec. 6.

Argued orally by *Theodore McKnight*, for appellees.

CALHOON, J., delivered the opinion of the court.

On March 22, 1887, Frank B. Lanier was the owner in fee simple of the lands in controversy, and on that date he borrowed $500 from L. N. Buck, to secure which, payable in five years, he presented a trust deed purporting to be signed and to be duly acknowledged by himself and his wife, Mary E. Lanier, before a justice of the peace, who has since died. The record appearing free from any incumbrances or liens, Mr. Buck furnished the $500. Mrs. Lanier, the appellee, testifies that she knew nothing of this loan; that her name to the deed is a forgery, which she "reckons" was committed by her husband, Frank B. Lanier, who was not produced as a witness by either side. And she further testifies that the certificate of the justice of the peace that she acknowledged the instrument is false. The court below found in her favor on the facts, and we will not disturb the conclusion to which it arrived as to this. Mr. Buck, how-

·ever, was without any knowledge or suspicion of this fraud. Notwithstanding the fraud, inasmuch as the husband was the owner of the lands, the conveyance in trust was valid as to any excess over the homestead, and, of course, there passed to his assignees, immediate or remote, the same right he had to resort to such excess for satisfaction. A few weeks after this transaction, Mr. Buck discovered that there was a sum of about $500 unpaid by Mr. Lanier of the purchase money of the lands, which sum was a lien on them, and that a cancellation appearing on the record of this lien was false and fraudulent, and that this debt for unpaid purchase money was held by Mr. Ben Dart as guardian of some minors, and so, for his own protection, Mr. Buck bought this debt, and had the note for it assigned to him. Thereupon he undertook to have it consolidated with the first note, and, pursuant to arrangement with Mr. Lanier, he was to mark "satisfied" on record of his trust deed, upon being furnished another to secure $1,000, this amount being made up of the original $500 debt to him and the $500 of the unpaid purchase money note he had bought. So Mr. Lanier brought or sent him another trust deed, with the same trustee for security, for the $1,000, with ten per cent. interest, payable five years after date, purporting to be signed by him and his wife, and purporting to be acknowledged by her and him before the same justice of the peace. This trust conveyance bears date May 21, 1887. Mrs. Lanier swears that she never signed or acknowledged this instrument, and the court below held accordingly, and we do not disturb this ruling. Mr. Buck believed the whole thing valid, and there was no circumstance to awaken his suspicions. In this attitude of the case, it is very clear that his trust deed was valid to the extent of the unpaid purchase money paid by him on all of the land and on the excess over the homestead for the remainder of his debt. As to the unpaid purchase money, the note for which he was the assignee covered the whole land, and he canceled this security under the belief that his new trust deed securing

his new $1,000 debt covered the whole land, which it would
have done if Mr. Lanier had not forged his wife's signature.
The vendor's lien note is filed by complainant in evidence.

Afterwards, and on December 31, 1887, Mr. Lanier con-
veyed the whole land to his wife, Mary E. Lanier. She was
a volunteer, pure and simple, and paid nothing for it, and so
she took it charged with all the equities of Mr. Buck. Sub-
sequently to this donation by him to his wife, Mr. Lanier
wanted more money; and so he negotiated a loan of $2,100
from the Jarvis-Conklin Loan Company, and, in order to get
it, presented a trust deed purporting to be signed and acknowl-
edged by him and his wife. Mrs. Lanier swears that this is
another forgery, and the court sustained her, and we do not
disturb the decree as to this. This instrument is of date Janu-
ary 1, 1890, to secure the note of the grantors, Lanier and
wife, payable five years after date, interest payable semiannu-
ally, as shown by coupons, at 6 per cent. per annum, but the
coupons to bear 10 per cent. after maturity, and the debt to
become due in full, at the option of the beneficiary, on any de-
fault, and Lanier and wife were to keep the taxes paid; and
this covenant as to taxes is in both the Buck trust deeds, be-
fore mentioned. Out of this $2,100 the Buck debt was wholly
paid, and he marked it "satisfied" on the record of the trust
deed which had been given to secure him his $1,000. This
payment to Buck was required to clear the record title, and
complainant holds the notes by Buck's assignment to a bank,
and the bank's indorsement in blank. Default being made in
interest payments on the $2,100, the land was sold by a sub-
stituted trustee, and conveyed to Murray F. Smith, Esq., who
was agent for the Jarvis-Conklin Company, and his bid was
credited on the $2,100 note. This conveyance was of date
October 3, 1891. On October 19, 1891, Smith conveyed the
land to Beardsley and Gilbert, who on December 12, 1894,
conveyed it to the Western Investment Company, which on
March 1, 1897, conveyed it to appellant, who, on June 17,

1898, filed the original bill in this cause, praying the court to cancel certain tax conveyances, to be hereinafter referred to, as clouds, and praying to be put in possession of the lands. To this bill Frank B. Lanier made no appearance, and a decree *pro confesso* was taken against him. But she did answer, and set up that her numerous signatures to deeds and notes were frauds and forgeries, sets up homestead rights, relies on the gift conveyance by her husband to her of May 21, 1887, and relies on the tax titles. There was an amended bill, an answer and cross bill, a demurrer to the cross bill overruled, and then an answer to that, all of which we need notice no further than to say that the facts hereinbefore detailed and to be stated appear in appropriate pleadings.

The tax titles set up by Mrs. Lanier are traced through three tax conveyances to one P. H. Feld, each of the same date (March 2, 1891), purporting to convey each separate parcel of what Mrs. Lanier avers to be the land in controversy, and next a conveyance from Feld to Gibson of date May 25, 1892, and finally a conveyance from Gibson of date November 11, 1893, to her and "her children then living," and the children are parties to this cause. She relies on this and the three-years statute of limitations in favor of purchasers at tax sales. Now, it is plainly manifest that Mr. Buck, and all the parties in interest under him, at the time they became interested, were in absolute ignorance of all the frauds of F. B. Lanier which have been recited. Every action was had in the utmost good faith, under the belief, derived from the face of the records, that the instruments were duly signed and acknowledged by Mrs. Lanier. Now, if they had been genuine, it is too plain to discuss that Mr. Buck could not have been defeated as to the $500 vendor's lien paid on the whole land, and as to the $500 afterwards loaned by him when Mr. Lanier was sole owner, by the tax title or anything else set up by Mrs. Lanier and her children that appears in this record, short of the statute of limitations from the time of notice of the fraud. They were in pos-

session, and remained so, charged with all the equities of Mr. Buck; and it was their duty to keep the taxes paid, and any purchase by them or for them of an outstanding tax title was a mere extinguishment of it for the benefit of Buck's equities, and for the benefit of all parties under and in privity with him. It is not to be tolerated that a party in possession as a mere volunteer by gift, may defeat a vendor's lien, or a right of one to the excess over the homestead, by buying at tax sale, or from one who has bought at tax sale. A tenant in common, even out of possession, could not do this. *Cohea* v. *Hemingway*, 71 Miss., 22, s.c. 14 South., 734. And much less can it be done by volunteers in possession solely under the fraudulent husband and father. This disposes of the tax title, and so we do not address ourselves to any inquiry as to whether the tax conveyances are or are not void on their face.

But Mrs. Lanier goes even further in the effort to continue to enjoy the fruits of the monstrous frauds committed by her husband. Believing that the statute of limitation might save to her the plunder achieved by her husband's unparalleled iniquity, she sets up the bar of the statute of limitations, and, aware that she could not show actual notice of the fraud, she endeavors to show constructive notice to start the running of the statute. In cases of fraud the cause of action "first accrues at, and not before, the time at which the fraud shall, or, with reasonable diligence might have been first known or discovered." Code, §§ 2731-2762. Plainly in the case at bar the statute of three years cuts no figure, as the debts were all evidenced by notes. The constructive notice on which Mrs. Lanier relies consists of a bill in equity (No. 2282 on the docket) filed in her name on June 3, 1892, against Beardsley & Gilbert, attacking the conveyance to Murray F. Smith, and his conveyance to Beardsley & Gilbert, as well as that from the substituted trustee under the first deed to secure the Jarvis-Conklin Mortgage Company, on the ground that her husband or some one else had signed her name to the trust

deed, and that her husband had got the money, and used it for "his own private ends and enjoyment." About this bill, however, strangely enough, she swears as a witness in the case now at bar that she knew nothing, and that she never authorized it to be filed. Be this as it may, and if she can set up the six-years statute of limitations, which we do not decide, the facts do not sustain her in the contention that that bill was notice within that period. It could not be notice to Beardsley & Gilbert until service of notice on them, or publication of notice to them as nonresidents, or actual notice of the pendency of the proceeding, of all which there is no pretense of proof.

It is true it is shown that Murray F. Smith, Esq., out of whom the title had passed before the filing of bill No. 2282, which is apparently still pending, without any proceedings subsequent to the mere issuance of process, had notice of the bill and had agreed to answer it, but on account of pressure of business overlooked it; but it is nowhere shown that he had such notice within fourteen days after the process issued on it, which was June 3, 1892, and unless it was within that time, six years had not elapsed. But if the notice to him had been in time, it would not avail. He was not employed by Beardsley & Gilbert in that case. He was their counsel in Vicksburg to examine records and pass on titles, but it nowhere appears that he was ever authorized to accept service of process for them in any case. The doctrine of *caveat emptor*, of course, has no sort of application here. The chain of title shows purchasers innocent of any notice of the monstrous frauds, all in privity with Buck and clothed with all his equities, and parties in possession by gift must respond to them. They cannot avoid them and continue to enjoy a donation from the author of the fraud, or set up a tax title acquired by them while in possession. They took Frank B. Lanier's title charged with all the duties he was charged with, and amenable to the compulsion of the same equities which he would be compelled to satisfy. They are not in the category of innocent purchasers, whom the courts will

not be permitted to be damaged under the doctrine of subrogation.   *Bonner* v. *Lessley*, 61 Miss., 393.   The right of subrogation passes to innocent assignees in virtue of equity, and not of contract, and is of avail to them against all volunteers or mere donees.   Neither Buck nor any subsequent holder of the paper would have touched it but for ignorance of the fraud. The case is reversed and remanded with directions to the court below to ascertain the amount, principal and interest, as the note runs of the debt for unpaid purchase money extinguished by Buck, and make the sum total a charge, with interest from date of payment by Jarvis-Conklin Mortgage Company, on all the land, and to ascertain likewise the sum total of principal and contract interest on the remainder of the $1,000 Buck note, and make it a charge, with interest from date of payment by Jarvis-Conklin Mortgage Company, on the land in excess of the homestead, the homestead to be allotted according to law. Otherwise, the final decree below is not disturbed.

*Affirmed in part and reversed in part.*