*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.

LEE, et al. *v.* DUNCAN, et al.

March 1, 1954

No. 39095 55 Adv. S. 17 70 So. 2d 615

*W. H. Watkins, Jr.,* Tylertown, for appellants.

*Breed O. Mounger,* Tylertown; *O. W. Phillips,* Magnolia, for appellees.

ETHRIDGE, J.

This is a suit to cancel a 1936 mineral deed on the ground that the grantors' signatures were forged. It was brought in the chancery court of Walthall County, by R. M. Duncan and his wife Daisy Duncan, and by their two grantees, appellees herein, against the grantee in the mineral deed, Homer P. Lee, Jr., and his successor in title, George H. Coates.

In 1933 R. M. Duncan purchased the 160 acre tract in question. He and his wife lived on a 40 acre tract adjoining on the east. The deed purports to be a conveyance from R. M. Duncan and wife, Daisy Duncan, to Homer P. Lee, Jr., of 15/16ths of the minerals under the 160

acre tract. It is dated March 20, 1936. G. M. C. Duncan, brother of R. M. Duncan and known as Garland, also is shown by the deed to be a grantor. There is no evidence to indicate that G. M. C. Duncan did not sign this instrument. It reflects that it was acknowledged before a notary public and was filed for record on March 28, 1936.

The bill of complaint charged that the deed was a nullity, and that the signatures of R. M. Duncan and Daisy Duncan had been forged to the instrument. Appellants, Lee and Coates, denied these averments in their answer, and pleaded ratification, estoppel and laches. Coates pleaded further that he was an innocent purchaser for value without notice of such claims. The final decree of February 14, 1953, adjudicated that neither R. M. nor Daisy Duncan executed the deed, that their signatures had been forged on it, that the deed should be cancelled, and that they never knowingly ratified it. Hence the instrument was cancelled as a cloud on appellee's title.

 We have concluded that the chancery court was correct in finding that Mrs. Daisy Duncan did not execute the instrument, but was in error in finding that R. M. Duncan did not execute it. We will not undertake to detail the testimony, but the great weight of the evidence shows that R. M. Duncan in fact executed this deed. He is 83 years of age and his memory is somewhat impaired. He testified that he never signed the deed, but he remembered that his brother Garland helped him to pay for the purchase of the 160 acres and took a mortgage on it; that Garland leased all of his land to a man from Texas, and that since Garland had a mortgage on R. M. Duncan's land, "he leased mine too." He said that Garland came over to his house and brought a check for $40 in payment for the "lease" of R. M. Duncan's land; that Garland told him he was then getting only 10c an acre and that he had leased it for R. M. Duncan for 25c an acre. He denied that Simmons, the notary public, took his acknowledgment and denied that

he had authorized anyone to sign his name. He remembered that Garland had brought him the $40 check for the "lease" of his land in March 1936, and that one of the men who came with Garland was C. W. Smith, who the record shows was representing Lee in buying mineral deeds. He said that he "might have" signed "something." He admitted receiving the benefit of the $40 for what he thought was a "lease." He endorsed the draft to Garland, and he got credit for the $40 on his mortgage debt to Garland.

Appellants introduced, for purposes of impeaching R. M. Duncan's testimony, the testimony which he had previously given in Cause No. 35,478 in this Court, which was a suit by R. M. Duncan's brother Garland to cancel a similar deed allegedly obtained by Lee through fraud. In December 1943 this Court reversed a decree setting that deed aside, and held that Coates was an innocent purchaser. Lee v. Duncan, 195 Miss. 799, 16 So. 2d 31 (1943). In that case R. M. Duncan testified that he recalled that his brother Garland and two other men came to his house in March 1936 for the purpose of buying a "lease" on his property, paying 25c an acre; that he did not remember whether C. W. Smith was there, but that he signed an instrument and drew a draft on Homer P. Lee, Jr., the appellant, for $40; that his brother also signed the instrument. He thought it was a lease. He further testified in that case that he had been getting $16 a year rentals on a lease on his lands, which the records reflected was owned by the Sun Oil Company, but that after he had executed the instrument in March 1936 he did not continue to get $16 a year, but got $1 out of the $16, which, of course, is consistent with the execution by him of a 15/16ths mineral deed. In the present case R. M. Duncan testified that he had been drawing $16 a year rentals on his lease, but that after he executed in March 1936 what he thought was a lease, he "never received a penny." Most of his testimony in the Garland Duncan

case is wholly in contradiction of his testimony in the present case. And in the instant case he said that what he had testified in the Garland Duncan case was the truth as near as he knew it. Moreover, C. W. Smith, who represented Lee at the time, testified categorically that he remembered buying the minerals from R. M. Duncan.

In addition, the original deed with the signatures in question is in the record, and admittedly true signatures of R. M. Duncan are also in the record. We have compared those signatures of R. M. Duncan and are of the opinion that they are identical and by the same person. And the testimony of a handwriting expert offered by appellants is clear and definite in support of that conclusion. All of these factors render the conclusion inescapable that R. M. Duncan executed the deed in question. Whether he erroneously thought that what he was signing was a lease does not affect whatever rights Coates, appellant, has in these minerals, since it is undisputed that he is an innocent purchaser from Lee for value without notice of any claims of appellees. Lee v. Boyd, 195 Miss. 794, 16 So. 2d 30 (1943); Lee v. Duncan, supra.

Mrs. Daisy Duncan testified that she did not sign the deed and that she did not authorize anyone to sign her name for her; and that she could not write her name, but that when she executed an instrument it would have to be by her mark. Appellants concede that Mrs. Duncan can not write her name. The deed in question has on it in someone's handwriting ''Daisy Duncan.'' Her testimony and this concession are ample to rebut the presumption of execution by her arising from the acknowledgment. There was substantial support in the record for the chancellor's finding that Mrs. Duncan did not execute the deed. For that reason she is not bound by it even as against an innocent purchaser for value. Laster v. Ard, 42 So. 2d 737 (Miss. 1949).

Appellants argue that both of the grantors are bound by the deed because they have ratified and adopted it, and are estopped to deny it. We do not need to consider this argument with respect to R. M. Duncan, since we hold that he executed the deed. As to Mrs. Daisy Duncan, this argument is based principally on the fact that on February 4, 1942, R. M. and Daisy Duncan executed a deed of trust to the Land Bank Commissioner on the lands in question, which contained a recitation following the description of the property, that there was excepted ''15/16ths interest in the minerals''; and that on February 13, 1942, R. M. and Daisy Duncan executed to the Federal Farm Mortgage Corporation, owner of the above deed of trust and note, an assignment of rentals and royalties which would accrue under a lease on the lands in question owned by Sun Oil Company as lessee, pledging the same as additional security for a loan. That instrument after the description stated: ''It is understood and agreed that only 1/16 interest in the benefits of the aforementioned lease is conveyed herein as 15/16 interest therein has heretofore been conveyed to Homer P. Lee, Jr.'' These instruments were recorded. Appellants say that their execution by Mrs. Duncan constituted a ratification by her of the deed, that she and her husband received the $40 which had been paid for the deed; and that they had constructive notice of the deed since it was filed for record immediately after its alleged execution.

The trial court found that Daisy (and R. M.) Duncan did not ''knowingly'' ratify this deed. A fair interpretation of her testimony is that she knew nothing about it. She also said that no one had come to their place and undertook to interfere with their claim to the minerals. She is illiterate, and it is most doubtful that anyone read to her the entire deed of trust or assignment. In Denkmann Lbr. Co. v. Morgan, No. 50 Miss. Advance Sheet p. 28, January 29, 1954, grantees of a mineral deed excepting 7/8ths of the minerals subse-

quently executed a Federal Land Bank deed of trust which contained a recitation that it was subject to the earlier mineral exception. The finding of the chancery court that there was no ratification or estoppel was affirmed, where there was evidence that the deed of trust had not been executed by the mortgagors with knowledge of the existence of such recitation in that rather long printed instrument. Such recitals constitute evidence, but not conclusive evidence, of knowledge of the exception by the borrowers. That principle is applicable here. Moreover, there is no showing that Mrs. Duncan received any part of the $40 paid by Lee. There is sufficient evidence to support the chancellor's finding that Daisy Duncan did not knowingly ratify the deed, and accordingly is not bound by it.

 Appellants say that appellees are barred from questioning the validity of the mineral deed because of laches; that appellees made no claim of forgery for 14 years, until 1950 when the suit was filed; that if a forgery occurred it apparently was done by Garland Duncan who died in 1942, and his testimony is lost because of the lapse of time; and that the living witnesses who testified have forgotten many of the circumstances of the transaction during that long period of time. The death of Garland Duncan occurred only six years after the date of the deed, and appellees would certainly not have been barred by laches within that time. No open and notorious claim was made by appellants to the minerals during this time, and it does not appear that Daisy Duncan had any knowledge of appellants' claim under the mineral deed. So whatever rights she has as against the deed are manifestly not affected by the plea of laches. The question of laches was essentially a question of fact for the trial court, and we do not think that it erred in refusing to apply that doctrine. Compare Laster v. Ard, supra.

 In 1933 R. M. Duncan purchased the 160 acre tract in question, described as the E½ of NE¼, and N½ of

SE¼ of Section 25, Township 1 North, Range 11 East, Walthall County. Adjoining to the east of the northern 80 acre tract above described was a 40 acre tract also owned by R. M. Duncan, and upon which his home was situated. He owned the legal title to the entire 200 acres in 1936, but his wife, appellee Daisy Duncan, had a homestead interest in 160 acres under Code Section 330. Since she did not execute the mineral deed of March 20, 1936, the deed is *pro tanto* void, being invalid as to the minerals under the homestead property. On the other hand, since Daisy Duncan did not have the legal title to the property but only a homestead interest in it, the mineral deed is *pro tanto* valid, as to the minerals conveyed by the deed which were under lands not within the homestead. The applicable rule is concisely stated in 26 Am. Jur., Homestead, Section 135, p. 87: "If property in excess of the statutory amount is described in the instrument of conveyance, the grant, although not concurred or joined in by both spouses, is operative as to the part which is not subject to the homestead right. Where a husband alone executes a conveyance of a tract of land, and the tract includes both the homestead exemption and land in excess of the exemption, it is generally held that although the conveyance is invalid as to the homestead premises, it is a valid conveyance in so far as it alienates any excess, either in quantity or value, over the legal exemption, and that appropriate proceedings may be had to admeasure the homestead and subject the excess to the conveyance."

This rule had been applied in several Mississippi cases. North American Trust Company v. Lanier, 78 Miss. 418, 28 So. 804 (1900); Robert G. Bruce Company v. Spears, 181 Miss. 786, 181 So. 333 (1938); Hughes v. Hahn, 209 Miss. 293, 46 So. 2d 587 (1950); Thompson v. Dyess, 67 So. 2d 721 (Miss. 1953). In 1947 R. M. and Daisy Duncan conveyed to the other appellees all of their interest in the 160 acres affected by the mineral

deed. But the *pro tanto* validity of the mineral deed must be determined as of the time of its execution in 1936. And R. M. and Daisy Duncan can assert the invalidity of the deed only as to the statutory homestead, defined as "not to exceed one hundred and sixty acres in area, nor $3,000 in value." Code of 1942, Sections 322-324. They were actually living on the adjoining 40 acres. As was held in Robert G. Bruce Company v. Spears, supra, and Thompson v. Dyess, supra, it would be improper for this Court to undertake to designate the specific 160 acres then constituting the homestead, out of the total of 200 acres. The decree of the chancery court is affirmed in part, and in part reversed and remanded so that commissioners may be appointed under the statutes to make the allotment of homestead. When that is done, the mineral deed should be adjudicated to be invalid as to the minerals under the allotted homestead, and to be valid as to the minerals under the part which is not subject to homestead rights and is in excess of the exemption.

Affirmed in part, and in part reversed and remanded.

*Roberds, P. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.