BIGLANE *v.* RAWLES, et al.

No. 42631        May 13, 1963        153 So. 2d 665

*J. Martin Mooney,* Seminary, for appellant.

*Hugh McIntosh, John D. Kervin,* Collins, for appellees.

*Ewing & Kendall,* Jackson, for Pan American Petroleum Corporation.

McGEHEE, C. J.

On November 26, 1917, Mr. W. A. Rawls, of Covington County, obtained a warranty deed from J. A. (Babe) Knight and wife for 140 acres of land including the S½ of SE¼ of NE¼ and the NE¼ of SE 1/4 in Section 26, Township 8, Range 15 West in said County. Thereupon the said W. A. Rawls and wife, Mrs. Trannie Rawls, moved into the Babe Knight house located on the NE¼ of SE¼ of said section, township and range.

During the year 1925 the said W. A. Rawls and wife moved from the Babe Knight place onto adjacent land of his father, W. F. Rawls. That is to say, across the road from the Babe Knight house and into W. F. Rawls' larger and better house on the adjacent land to the west, where the said W. A. Rawls and his wife Mrs. Trannie M. Rawls resided until the year 1943, when W. A. Rawls died, and where the said Mrs. Trannie Rawls and her children continued to reside until March 1962, — a total of approximately thirty years — before this suit was filed by her, her children, and one of her grandchildren against the appellant Lester Biglane, who on December 9, 1932, purchased from W. A. Rawls one-half of the mineral interest in the minerals under the NE¼ of SE¼ and the S½ of the SE¼ of NE 1/4 of said Section 26, Township 8, Range 15 West, without Mrs. Rawls joining in the execution of the two separate deeds. This fact is conceded.

The two mineral deeds from W. A. Rawls to his nephew, Lester Biglane, were executed as aforesaid on December 9, 1932, and were placed of record as to the

40 acres about 1:00 P. M. on that same day and the other deed for one-half of the minerals under the other 20 acres was filed for record about 5:00 P. M. of the same day, December 9, 1932, although the complainants did not actually know of either deed until the latter part of 1959.

The mineral deed for one-half of the minerals under said NE¼ of SE¼ contained the following words which were written in the handwriting of the grantor W. A. Rawls, and read as follows: "This is no part of my homestead." And in the deed to one-half of the minerals in the S½ of SE¼ of NE¼ of said section, township and range, there was a similar notation in the handwriting of the grantor W. A. Rawls, reading as follows: "This not being any part of homestead."

The defendant in this suit, Lester Biglane, set up as his first defense the bar of the ten year statute of limitation under Sections 709 and 710, Code of 1942 Rec., and as a second defense he pled laches on the part of the complainants, since they had not challenged the validity of the mineral deeds from W. A. Rawls to the defendant Lester Biglane at any time from December 9, 1932, to March 1962, a period of thirty years.

However, this Court held in the case of Sample v. Romine, 193 Miss. 706, 8 So. 2d 257, that the question of laches is largely addressed to the sound discretion of the chancellor, and his decision will not be disturbed on appeal unless it is clearly wrong and amounts to an abuse of discretion. This disposes of the case as to the second defense pleaded.

As to the bar of the statutes of limitation under Sections 709 and 710, Code of 1942, the complainants set up as a defense thereto that neither the defendant Biglane, nor anyone claiming under him, had ever invaded the rights of the complainants by an adverse entry, and that the complainants had themselves been in the continued open, notorious, and uninterrupted pos-

session of the land since the execution of the mineral deeds on December 9, 1932. Beginning with the case of Dingey v. Paxton, 60 Miss. 1038, the rule has now become well settled that one, who is already in the possession and enjoyment of all that he claims, cannot be required to commence a suit until there has been an adverse entry upon the land involved in a controversy. Until complainants' possession of the land here in question is invaded, they are not required by any statute of limitation to bring a suit to recover the real estate of which they are already in full enjoyment.

The present suit was filed by Mrs. Trannie Rawls, her children and one of her grandchildren in March 1962, and the chancery court was asked to appoint commissioners to designate and select the homestead of the grantor as of *December 9, 1932*. The complainants, who are the appellees here, selected one commissioner, the appellant, Lester Biglane, selected one commissioner, and the chancellor appointed the third commissioner, who was approved by the attorneys for both the complainants and defendant. Those commissioners found that as of December 9, 1932, the said W. A. Rawls, grantor in the two mineral deeds, then owned a total of 211.5 acres of land, including the 60 acres under which he had sold one-half of the minerals to the said Lester Biglane. These 60 acres of land were selected by the commissioners, with one of them not consenting thereto, as a part of the homestead of W. A. Rawls as of December 9, 1932.

Section 322, Code of 1942, is the statute which provides for the appointment of commissions to designate and select the homestead of the exemptionist, where he has not done so in the manner provided by law in his lifetime. And the chancellor found that W. A. Rawls had not designated and selected his homestead in his lifetime in the manner provided by law, and the proof disclosed that they designated and selected less than

160 acres out of a total of 211.5 acres, but which selection included the 60 acres described in the two mineral deeds in question, together with the W. F. Rawls old home place, owned by W. A. Rawls on December 9, 1932, and on which the dwelling house was located, all of a total area of not exceeding 160 acres and value of not more than $3,000, which consisted of contiguous parcels in the form of a square or parallelogram as nearly as practicable as provided by Section 319 to 323, inclusive, Code of 1942.

The appellant also set up as a third defense to the proceedings last above mentioned that the said W. A. Rawls had in his lifetime made the said designation and selection of his homestead, as being lands other than the 60 acres, on which he had conveyed one-half of the minerals to the appellant, by his notation in each of these mineral deeds in his own handwriting that the land therein described was no part of his homestead. In other words, that he by the above mentioned notations designated and elected that his homestead would be on lands other than the 60 acres therein described, and in support of this contention appellant cites the cases of Rutherford v. Jamieson, 65 Miss. 219, 3 So. 412, and the prior case of Majors v. Majors, 58 Miss. 809. But this action on the part of the grantor was a designation and selection of the homestead by the head of the household and substantially as required by Section 322, Code 1942. Moreover, Mr. and Mrs. W. A. Rawls had during the year 1931 executed a deed of trust in favor of the Commercial Bank & Trust Company at Laurel, Mississippi, on 73 acres of other contiguous land, and stated in the deed of trust that said land constituted a part of their homestead.

In the case of Rutherford v. Jamieson, supra, the Court stated: "Mr. Rutherford sustained such relation to several parcels of land as to be entitled, at the time of this transaction, to select which was his homestead;

and in executing the deed of trust conveying some of these parcels he must be held to have *made his selection of other land than that conveyed, for his homestead,* and will not be permitted now to say that his homestead consisted of the land conveyed. Homestead rights are to be protected according to law, but are not to be perverted into instruments of fraud." (Itallics ours). Rutherford himself brought that suit, but was not permitted to change his position to the detriment of the appellee Jamieson.

There are several established principles which are pertinent to the facts of this case. First, the husband, as head of the family, has the right to select the homestead, and the wife is bound by his selection, if it is made in good faith and not for the purpose of defeating her rights. Tanner v. Tanner, 111 Miss. 460, 71 So. 749; Ritter v. Whitesides, 179 Miss. 706, 176 So. 728; Cliett v. First National Bank, 182 Miss. 560, 181 So. 713; Livelar v. Kepner, (Miss.) 146 So. 2d 346; 40 C. J. S., Homesteads, Sec. 47; see Miss. Code 1942, Rec., Secs. 319-323.

Second, a conveyance, even though it is invalid as to the homestead, may be sufficient to convey that portion of the property covered by the conveyance which is in excess of the statutory exemption. This rule is summarized in 40 C. J. S., Homesteads, Sec. 146, as follows: "While there is authority to the contrary, the general rule is that a deed or mortgage covering the homestead and other lands, or covering a single tract whose value exceeds the statutory exemption, although it is invalid as to the homestead, may yet be sufficient to convey or encumber that portion of the property which is in excess of the statutory exemption. The same rule applies to contracts to convey as well as to conveyances and mortgages, and also to leases." .

To the same effect is 26 Am. Jur., Homestead, Sec. 135: "If property in excess of the statutory amount

is described in the instrument of conveyance, the grant, although not concurred or joined in by both spouses, is operative as to the part which is not subject to the homestead right. Where a husband alone executes a conveyance of a tract of land, and the tract includes both the homestead exemption and land in excess of the exemption, it is generally held that although the conveyance is invalid as to the homestead premises, it is a valid conveyance in so far as it alienates any excess, either in quantity or value, over the legal exemption, and that appropriate proceedings may be had to admeasure the homestead and subject the excess to the conveyance.''

In Anno., 45 A. L. R. 395, 413-414, there are cited many cases applying this apparently universal rule, with no dissent. That rule is summarized therein as follows: ''Where a husband alone executes a conveyance of a tract of land, and the tract includes both the homestead exemption and land in excess of the exemption, it is generally held that, although the conveyance is invalid as to the homestead premises, it is a valid conveyance in so far as it alienates any excess, either in quantity or value, over the legal exemption, and that appropriate proceedings may be had to admeasure the homestead and subject the excess to the conveyance.''

The foregoing principle hereinabove discussed has long been established in Mississippi. The most recent application of it was Lee v. Duncan, 220 Miss. 234, 243, 70 So. 2d 615. Other Mississippi cases cited therein applying this rule are: North American Trust Co. v. Lanier, 78 Miss. 418, 28 So. 804; Robert G. Bruce Co. v. Spears, 181 Miss. 786, 181 So. 333; Hughes v. Hahn, 209 Miss. 293, 46 So. 2d 587; Thompson v. Dyess, 218 Miss. 770, 67 So. 2d 721; see 1 American Law of Property (1952), pp. 826, 857, 869-871.

■■ ■ The next proposition is stated in 40 C. J. S., Homesteads, Sec. 43, as follows: ''* * * where the owner

of a tract sells a part and retains the balance which is sufficient in value and extent to constitute a homestead, the owner thereby elects to treat the part retained as a homestead." Williams v. Kilpatrick, 195 Ala. 563, 70 So. 742; Hall v. Gottsche, 114 Iowa 147, 86 N. W. 257.

40 C. J. S., Homesteads, Sec. 146, states this principle in this way: "Where a homestead exceeds in value or area the statutory exemption, a sale of the excess operates as a selection of the remainder as the homestead to the exclusion of the alienated tract, and hence a sale of such excess is not rendered invalid because it fails to comply with the statutory requirements for the conveyance of homesteads." Alabama Power Co. v. Cornelius, 211 Ala. 245, 100 So. 207.

In Williams v. Kilpatrick, 195 Ala. 563, 70 So. 742, the Alabama statute allowed a homestead claim of a value up to $2,000. Williams and his wife lived on an 80 acre tract of land, as their homestead. In that case there was involved a one-acre tract as a part of the homestead. The total value was $2,500, and the 1-acre tract was worth $25-$30. Kilpatrick, the complainant, made an oral contract to sell Williams, the defendant, a mare, in return for which the defendant would convey to Kilpatrick the 1-acre tract. The transaction was completed, except the defendant had not executed a deed. Complainant went into possession of the land, and transferred the mare to the defendant. Defendant, claiming the mare was physically defective, declined to convey, and Kilpatrick brought suit for specific performance of the contract to convey. The court said: "When the owner of a homestead which is greater in value than $2,000, or in area than 160 acres, sells a portion thereof, leaving, including the dwelling and contiguous thereto, the maximum value or area allowed by law for the homestead, this amounts to the selection of a homestead to the exclusion of the alienated tract, and the provisions of the code (section 4146) with respect to the alienation

of homesteads have no application. This proposition does not seem to have been heretofore considered by this or any other court, but its propriety cannot be doubted, and it is in harmony with our statutes and decisions.''

Hence the verbal sale of the 1-acre tract was sufficient to give complainant an equitable title, subject to the wife's dower right, and the court said complainant was entitled to specific performance. However, the chancery court denied it, and the complainant did not appeal, being satisfied with the judgment for $35 and a lien on the property, the 1-acre tract. The defendant's appeal was affirmed. Complainant was entitled to specific performance, and at the least was entitled to the alternative relief granted by the chancery court.

In Alabama Power Co. v. Cornelius, 211 Ala. 245, 100 So. 207, Cornelius and wife sued the power company in trespass for constructing an electric line across their land. Defendant offered in evidence a deed from Mr. Cornelius, without his wife's signature, to Jefferson County for a right-of-way for a road over the land. The power line was placed on the road right-of-way. Plaintiffs owned the land jointly. The court said: ''The result is each of these plaintiffs would be entitled to an exemption not in excess of $1,000 in value each, and not to the extent of $2,000 each. The homestead being greater in value than $2,000, the sale or dedication of the excess by the owner operates as a selection of the remainder as the homestead to the exclusion of the alienated tract. Williams v. Kilpatrick, 195 Ala. 563, 70 South. 742.'' Hence it was held that Mrs. Cornelius did not convey her interest, and had a right of action as to her one-half interest, but not the husband.

In Irvin v. Irvin, (Ala.) 93 So. 517, the alienation and selection rule, stated in the Williams and Cornelius cases, was held not to be applicable where the land involved was part of the homestead, and worth less than $2,000.

Metropolitan Life Ins. Co. v. Estes, (Ala.), 155 So. 79, in a dictum, endorsed the rule of Williams v. Kilpatrick, but held it was not applicable to the facts in that case.

Thorp v. Thorp, 70 Vt. 46, 39 A. 245, cited in Hall v. Gottsche, supra, authorized foreclosure of a mortgage executed by the husband on a store near the home and premises, where the entire property exceeded in value the homestead exemption. The court said: "All the ends and purposes of the exemption are met if he does convey some part of his estate which might have, but has not, been used as a part of his homestead, so long as he leaves the dwelling house, outbuildings, and land used in connection therewith of sufficient value to give his widow a full homestead. So far as use or keeping is determinative of the location of the land used in connection therewith, the husband's acts and intention, by the terms of the statute, control. The master has found that Homer Thompson's intention and use of the land connected with the Wheeler house, when he gave the mortgage sought to be foreclosed, fixed the homestead in land owned by him other than that covered by the mortgage. This enabled him to convey the store and lot by his sole deed. The orator has the right to foreclose the mortgage against the estate of Lovisa A. Thompson."

Miss. Code 1942, Rec., Sec. 323, expressly recognizes the excess rule. It provides that, if a proper selection of homestead has not been made, an officer holding an execution against the person shall levy execution on the whole land, the officer shall select three householders to set off to such person a portion of the land embracing the dwelling house and outhouses, and "the levy of the execution shall be dismissed as to the part so allotted; and the officer may advertise and sell the remainder of the land."

A Mississippi case directly on this issue is Rutherford v. Jamieson, 65 Miss. 219, 3 So. 412 (1887). In December, 1879 Rutherford moved his family from his farm to Blue Mountain, for the purpose of educating his daughters, and purchased a house in that town, where his wife and daughters moved. He owned two adjoining tracts of farm land, each containing 160 acres. He and his boys remained on the farm, living in a house located on the tract in section 14, cultivating some of it, but mostly farming on the adjoining tract in section 13. In January, 1880 Rutherford borrowed from the Board of Supervisors' school fund some money, and executed a deed of trust on the section 13 land. His wife did not join. In the fall of 1880, he sold the tract in section 14, and he and his boys moved to the land in section 13. Later his wife and daughters returned and lived also on this tract. In 1886 there was a foreclosure of the deed of trust, at which C. L. Jamieson purchased, and later brought this action of ejectment. The jury's verdict for plaintiff was affirmed. The Court rendered the opinion hereinbefore quoted.

It will be noted that the court held that Rutherford was entitled to select his homestead, and execution of the deed of trust constituted such a selection. The instant case is even stronger than the Rutherford case. Here Rawls conveyed to Biglane by mineral deeds which expressly stated that the land was not part of his homestead. If the selection in the Rutherford case was evidenced merely by a conveyance, on an even stronger basis the selection here was made, both by the conveyance and by express recitals in the two deeds declaring the land was not his homestead. Moreover, 30 years elapsed before anyone attacked these instruments.

The Rutherford case has not been overruled, and would appear to apply to the instant case. Other related Mississippi decisions do not modify or weaken the Ruth-

erford ruling, but are distinguishable on other grounds. Moreover, we think it is sound and equitable.

Breland v. Parker, 150 Miss. 476, 116 So. 879, does not specifically apply to the present situation. It was held that a recitation in a deed from the husband to his wife, conveying her 200 acres, which stated that the land constituted no part of grantor's homestead, which was factually incorrect, was not binding on the grantee, the wife, or representatives of her deceased husband, when she subsequently conveyed 80 acres thereof. Mrs. Breland with her children was in the open possession and occupation of the land.

Ritter v. Whitesides, 179 Miss. 706, 176 So. 728, is relevant here. The Ritters owned 63 acres of land and lived on it for a while. In 1926 Mr. Ritter purchased another 188 acres, on which there was a better residence, and they moved on the 188-acre tract. While living thereon, Mr. Ritter executed a deed of trust on the 63-acre tract, which recited, "I have 160 acres other than this. This is a first lien on the above described property." Later the bank foreclosed its deed of trust, and brought this bill for cancellation of the claim of the Ritters and a subsequent mortgagee. Defendants contended the deed of trust was void because it was on their homestead, and the statement of Mr. Ritter in the deed of trust did not bind him or his wife. The court held they had moved to another tract of land not connected with the 63 acres, and the deed of trust was valid. The chancellor found that the 63-acre tract did not constitute a homestead, and this finding was affirmed. It was said that the husband had the right to select the homestead, and "the recital of J. W. Ritter in the deed of trust was sufficient evidence of his selection of a new homestead, when he and his wife were, in fact, occupying other land for living purposes."

In Kyle v. People's Bank & Trs. Co., 186 Miss. 287, 187 So. 534, Kyle owned 110 acres on which he resided

with his wife and children as a homestead. The 40 acres here involved was one-half mile south of the home place. He executed two deeds of trust to the bank, in 1927 and 1932, on the 40 acres, each of which recited that the 40 acres constituted no part of the homestead. Later the bank foreclosed, and brought suit to remove clouds. Kyle argued the deed of trust was void, because it was part of his homestead, since he had only a total of 150 acres, including the 40 acres. The chancellor found against him on this issue, and was affirmed. The court said that the stipulations in the deeds of trust that the 40 acres ''was no part of the homestead was not binding on him, nevertheless it was a declaration against interest, which the chancellor should have considered, and doubtless did consider, * * *.''

In Thompson v. Dyess, 218 Miss. 770, 67 So. 2d 721, complainant, a daughter of the grantor, filed suit to enjoin removal of timber and to recover damages. In 1946, Vaughn executed a timber deed to the entire 380 acres, part of which Vaughn and wife lived on, but had made no selection of homestead. He died in 1947, and the widow died in 1949. Complainant was their heir. Prior to the widow's death, Dyess had cut timber with no objection from the parents or complainant. Later complainant objected to cutting timber on a certain 160 acres. Dyess paid $1,400 for the timber deed, and his widow and complainant used that money. So far as the deed affected the homestead, the Court held it was void. Complainant was not estopped from asserting its invalidity, but was in no position to claim damages for the timber previously cut. However, the chancellor had denied an injunction, and the case was reversed and remanded for commissioners to be appointed to determine what part of the tract was homestead, and to enjoin cutting timber from it. It should be noted the timber deed did not convey the timber in only a part of the entire tract, and contained no selection

of homestead by the husband, or any recitation as to part of the same not being his homestead. See Ann., 128 A. L. R. 414; Anno., Lien of Judgment on Surplus in Quantity or Value of Homestead, 32 A. L. R. 1333.

After hearing evidence, the chancery court rendered a decree finding certain facts and conclusions, and appointing commissions to allocate the homestead. The court found that Rawls owned 211.5 acres of land, or an interest in that land, subject to homestead exemption; and that 160 acres should be allotted from this tract in order to determine whether or not the two mineral deeds of December 9, 1932 to Biglane constituted a part of Rawls' homestead. The court found that on March 30, 1931, Rawls and wife executed a deed of trust to a bank to secure a debt, being the 73 acres west and north of the east one-half of the southeast quarter of section 26, and that deed of trust recited: "We represent the above described land to be our homestead." Hence it was said that "because of the said stipulation" in the deed of trust, that 73 acres "constituted a part of the homestead of said parties on December 9, 1932", particularly in view of the fact that the home of Rawls was embraced in that description. The court accepted as a selection of homestead a stipulation in a deed of trust executed in 1931 by Rawls and his wife, stating a certain 73 acres was part of the homestead. Nevertheless, the chancery court declined to accept any such statement in the deed from Rawls to Biglane, excluding the lands in question covered by the mineral deeds.

Since the decree therefore found that Rawls and wife had already designated 73 acres, by their deed of trust, there was left remaining 138.5 acres, out of which the three commissioners were directed to select (for the remainder of the homestead) 87 acres, which would come out of the remaining 138.5 acres, "as of December 9, 1932." Their report selected the 60 acres covered by the one-half mineral deeds to Biglane, and the west

27 acres of the SE¼ of the SE¼, section 26. The final decree approved this report.

The second mineral deed was filed for record at 5:00 P. M. the same day. It conveyed one-half mineral in an adjoining 20 acres, the S½ of SE¼ of NE¼, Section 26, and recited "this not being any part of homestead." This suit attacking these mineral deeds was not brought by complainants until 30 years after they were executed and recorded. It was filed 19 years after the death of the grantor, W. A. Rawls, who died in 1943.

Under all of these circumstances, the following rule is applicable: Where the owner of a tract of land sells a part and retains the balance, which is sufficient in value and extent to constitute a homestead, and represents that the part conveyed is not his homestead; and where the part conveyed is not that upon which the family is residing and is not essential to operation of the homestead premises, and the conveyance was made in good faith and did not substantially impair the balance, which is sufficient in value and extent to constitute a homestead; — then, under these circumstances, the owner, by the execution of such deed and a recital therein excluding it from the homestead, has thereby selected the remainder, up to the statutory amount, as homestead, and has elected to treat the amount retained as homestead, not that granted. 40 C. J. S., Homesteads, Sections 43, 146. The sale of the excess operates as a selection for homestead of land other than the alienated tract. Rutherford v. Jamieson, 65 Miss. 219, 3 So. 412.

Applying the above rule to the facts of the instant case, our conclusions are as follows: On December 9, 1932 W. A. Rawls owned 211.5 acres of land, 51.5 acres in excess of the 160 acres exempted as homestead. The deed from Rawls to Biglane of that date, conveying one-half of the minerals in the NE¼ of the SE¼, Sec. 26, T. 8N, Range 15W, Covington County, Mississippi, and reciting it was not part of his homestead, constituted

a selection of part of the remainder as homestead, to the exclusion of the described alienated tract. That deed was filed for record at 1:00 P. M. on December 9, 1932. It validly conveyed to the grantee the interest therein stated. Hence the chancery court erred in cancelling that deed, and its decree so adjudicating is reversed, and judgment is rendered here adjudicating this deed is valid and binding.

The second deed from Rawls to Biglane is also dated December 9, 1932 but filed for record four hours later, at 5:00 P. M. The deed filed earlier presumptively was executed prior to the one filed later, and there is no evidence to the contrary. See Miss. Code 1942, Rec., Section 869. Accordingly, at the time of this conveyance of one-half minerals in 20 acres (S½ of SE¼ of NE¼, Sec. 26, T. 8, R. 15 W., Covington County, Miss.), stating it was not any part of grantor's homestead, the remaining acreage vested in Rawls was 171.5 acres, or 11.5 acres in excess of the legal exemption (160 acres). With reference to this deed, judgment is rendered here adjudicating as follows: that the said deed constituted a valid and binding conveyance of one-half minerals in 11.5 acres in the described tract, being the excess over the remaining gross homestead exemption; and that, in order equitably to carry out Rawls' selection by deed, there is allotted to Rawls' homestead, as of December 9, 1932, the west 8.5 acres of the S½ of SE¼ of NE¼, of Section 26. This is the land nearest his residence at that time. It is further adjudged that this deed validly conveyed to Biglane one-half of the minerals in the east 11.5 acres of the S½ of SE¼ of NE¼ of Section 26.

Those cases holding that on reversal there should be a remand for appointment of commissioners to make a homestead allotment out of a larger tract are not applicable here. Cf. Thompson v. Dyess, 218 Miss. 770, 776, 67 So. 2d 721; Lee v. Duncan, 220 Miss. 234, 244,

70 So. 2d 615. The reason is that, in the instant case, we hold that the grantor made his own selection of homestead in 1932, expressly excluding the alienated tracts to the extent of the excess over the exempted homestead area. Rutherford v. Jamieson, supra; see Miss. Code 1942, Rec., Section 322.

Reversed and judgment rendered here for appellant.

*Arrington, Ethridge, Gillespie, McElroy, and Jones, JJ.,* concur.

RODGERS, J., dissenting:

I cannot bring myself to agree with the majority opinion rendered in this case because I am apprehensive that it will work a mischief and tend to encourage the circumvention of our homestead laws. Moreover, I am of the opinion that this case will establish a new rule of estoppel, grounded upon an unintended construction of the case of Rutherford v. Jamieson, 65 Miss. 219, 3 So. 412. The opinion in that case was written in 1888 and was based upon the Code of 1880. The law at that time applicable to that case was as follows:

Sec. 1248. ''Every citizen of this state, male or female, being a householder, and having a family, shall be entitled to hold, exempt from seizure or sale, under any execution, or attachment, the land and buildings, owned and occupied as a residence by such debtor; *provided,* the quantity of land shall not exceed eighty acres, or the value thereof, inclusive of improvements, the sum of two thousand dollars.''

Sec. 1256: ''Whenever the debtor shall cease to reside on his homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily re-occupying it, as soon as the cause of his absence can be removed.

Sec. 1258: ''No mortgage, deed of trust or other encumbrance upon the homestead, exempted from exe-

cution, shall be valid or binding, unless signed by the wife of the owner, if he is married, and living with his wife.'' The word ''conveyance'' was inserted after the first word by the Laws of 1884, p. 81.

Secs. 1259 and 1260 required that the husband also sign the deed when the homestead belonged to the wife. Sec. 323, Miss. Code 1942, was brought forward from Sec. 1251, Code 1880, with the exception of the quantity and value of the land.

### AMENDMENT TO HOMESTEAD LAW.

After the Rutherford case had been decided in 1888, an amendment was made to the Homestead Laws and appeared in the Code of 1892 as Sec. 1975, as follows:

''Homesteads designated by law when not selected. — The homestead of every citizen entitled to such an exemption, who shall not select or who has improperly selected his homestead *by declaration, is designated as follows,* viz.: A tract of land in the form of, first, a square, or, second, a parallelogram if practicable, and composed, if practicable, of contiguous parcels, and including the dwelling-house, and, if practicable, the other principal buildings, and not to exceed one hundred and sixty acres in area, nor two thousand dollars in value. And in all cases where the homestead may be composed of detached parcels of land, it shall be made up of those nearest the forty-acre or other less tract containing the dwelling-house.'' (Emphasis supplied.)

Since the enactment of Sec. 1975, Code 1892, permitting the designation of a homestead, where no selection was made, or improperly made, the Rutherford case has been cited only once and that was in the case of Brantley v. Batson, 84 Miss. 411, 36 So. 524. Judge Calhoun cited it to explain the meaning of the two-home rule.

The Rutherford case, as I see it, is not authority for the new rule expressed in the instant case by the majority of this Court, because, in that case, Mr. Rutherford owned two adjoining tracts of land in Tippah County, one in Section 13 and the other in Section 14, of 160 acres, respectively. He was living on the tract on Section 14, and gave a trust deed on the property in Section 13. His wife and daughters were living in town. On January 21, 1880, Mr. Rutherford gave a deed of trust on his land in Section 13 as security for a mortgage. He was not living on the mortgaged land at the time. In 1886, this land in Section 13 was sold under the trust deed. His wife had not signed the trust deed. He then sold the land he lived on in Section 14 and moved on the mortgaged tract, Section 13, where his wife and daughters joined him. The briefs in the Rutherford case show that the land never became impressed with the elements of a homestead because it was never actually occupied as a home by the family. Appellant had never lived upon the land in controversy until long after the trust deed was given in January 1880, and Judge Campbell simply held that in executing the deed of trust on lands other than his homestead, he was held to have made his selection of the lands not mentioned in the trust deed as his homestead.

It is apparent that the situation in the Rutherford case is the same as Judge Campbell stated of Mr. Duke in the case of Richie v. Duke, 70 Miss. 66, 12 So. 208. The Court pointed out that where a homestead was setoff to a debtor, he could not afterwards abandon it and move onto another tract of land and sell the land setoff and then successfully claim as his homestead the new selection. The Court said: ''The claim of Mr. Duke is preposterous, and unallowable.''

It will be noted that since the decision of the Rutherford case, Sec. 1975 designates the homestead when it has not been selected by the husband. The phrase in

Sec. 1975, Code 1892, to wit: "is designated as follows, viz." was brought forward to Sec. 2151, Code 1906, but was left out of Sec. 1770, Code 1930, and was left out of Sec. 322, Miss. Code 1942. It is apparent, however, that the meaning is the same, for the reason that the heading of this section is as follows: "Homesteads designated by law when not selected."

It will also be observed that the wording of the statute as it appeared in Sec. 1975, Miss. Code 1892, was Amended by the Laws of 1912, Chap. 291, so as to raise the value of the homestead exemption from two thousand dollars to three thousand dollars. Sec. 1770, Miss. Code 1930, shows an additional amendment to the law designating the homestead in the following language:

"And in all cases where the deceased person has left a widow or husband, as the case may be, or other heirs at law, then such widow or husband, or other heirs at law, or both, who may be entitled by law to inherit from the deceased person, shall be entitled to have the homestead exempt, whether selected, designated or declared for by said decedent in his lifetime or not, and such person or persons so entitled to inherit by law may select, designate or declare for such homestead on or in any of the real property of which said decedent died seized and possessed, and have the same set apart to them, or either of them, as the homestead of the decedent."

The trial court did exactly as the law provides in this case.

It appears to me that Judge Calhoun explained the meaning of the Rutherford case in Brantley v. Batson, supra. In that case, Mr. Brantley lived on a lot he owned in town where he had lived for two years. He had other property four miles distant in the county, on which he had not lived for two years. Executions on judgment against him were levied on the county property and a week or two before the day of sale he moved

out and forbade the sale, as it was about to be made, claiming the county land as being his exempt homestead. The sale was not made, but the creditors secured alias writs of execution and levied on his town property. When it was advertised for sale, Mr. Brantley sold his county property and moved back on his town property, claiming it as his homestead. The Court, in citing Rutherford v. Jamieson, supra, said: "Homestead rights are to be protected according to law, but are not to be perverted into instruments of fraud." It is obvious from the opinion in the Rutherford case that Judge Calhoun simply meant that a man cannot have two homesteads.

The facts in the Rutherford case are a farcry from the facts in the instant case. In this case, the chancellor held that the property sold by the husband was a part of the homestead area. In one of the deeds to the minerals located on the homestead, the grantor stated "This is no part of my homestead", and in the other deed he wrote "This not being any part of homestead." As I see it, the Rutherford case was not an estoppel to exercise homestead rights, but was simply an estoppel of the husband (before the enactment of Sec. 1975, Code 1892) to claim land on which he had not resided and which was never a part of his homestead, since his homestead was on other land. On the other hand, the present case does not deal with lands in excess of the homestead, but was a sale of property which was held by the trial judge to have been a part of the homestead.

It is an anomalous situation to say on the one hand that a sale of a part of the homestead, without the wife's signature, is void under the statutory law of Mississippi, and on the other hand say that a sale of this very homestead area by the husband is a selection by the husband of other land.

If it were conceded that this Court intended to hold in the Rutherford case in 1888 that a husband could

select lands other than those described in the deed as his homestead, simply by writing into the conveyance "this is no part of my homestead", when, as a matter of fact, the land was being used as a part of the homestead area, that rule was certainly changed and superseded by Sec. 1975, Code 1892. Thereafter, when an exemptionist failed to select, or improperly selected, his homestead "by declaration", the law (Sec. 1975) "designated" it for him.

It appears to me, from the language of the opinion in the Rutherford case, namely, "and will not be permitted now to say that his homestead consisted of the land conveyed", it was clearly intended to be an estoppel, preventing the husband from claiming lands described in the conveyance as exempt under the homestead law, rather than a designation of other lands owned by the husband as homestead lands.

However, neither interpretation of the Rutherford case would be authority for the rule established in the present case, for the following reasons: (1) The statutory law has been so changed that the law itself now designates the homestead when it has not been selected by the husband. (2) When an exemptionist dies, without having made a selection of a homestead, as provided by law, his heirs who are entitled to the protection of the homestead laws may make the selection (Sec. 322, Miss. Code 1942). (3) Language written in a conveyance by the owner cannot now work an estoppel against the other spouse to claim homestead protection to property so conveyed, without his or her signature. (4) Language written into a conveyance under the present law, disclaiming the homestead in the property conveyed, without the signature of the other spouse, amounts to nothing more than a declaration against interest of the grantor when the question is raised as to whether or not the land therein described is actually homestead land.

## ESTOPPEL.

Let us consider the question of estoppel. I assume that it is conceded that an instrument attempting conveyance of land actually being used as a homestead, without the signature of the wife, is void and not voidable. See the following cases: McKenzie v. Shows, 70 Miss. 388, 12 So. 336; Yazoo Lbr. Company v. Clark, 95 Miss. 244, 48 So. 516; Hughes v. Hahn, 209 Miss. 293, 46 So. 2d 587; Hubbard v. Sage Land & Improvement Co., 81 Miss. 616, 33 So. 413; Johnson v. Hunt, 79 Miss. 639, 31 So. 205; Avera v. Williams, 81 Miss. 714, 33 So. 501; Bolen v. Lilly, 85 Miss. 344, 37 So. 811, 107 Am. St. Rep. 291; G. & S. I. R. R. Company v. Singletary, 78 Miss. 772, 29 So. 754; Kyle v. Peoples Bank & Tr. Co., 186 Miss. 287, 187 So. 534; Robbins v. Berry, 213 Miss. 744, 57 So. 2d 576; Levis-Zukoski Merc. Company v. McIntyre, 93 Miss. 806, 47 So. 435; Oatis v. Mingo, 199 Miss. 896, 26 So. 2d 453. See also: 95 Am. St. Rep. 911.

The true rule is expressed on p. 668, 40 C. J. S., Sec. 193, as follows: "As a general rule, when the family is in actual occupancy of the homestead by residing thereon, representations that the property is not a homestead will not estop the husband or wife so representing subsequently to claim the homestead exemption, because the occupancy of the property charges all persons with notice of its homestead character. Such representations, however, may work an estoppel where the property was not actually occupied as a homestead at the time the representations were made, or where it was used in such an ambiguous manner as to render its status as a homestead doubtful." The case of Breland v. Parker, 116 So. 879, 150 Miss. 476, is cited under this rule.

In the case of Breland v. Parker, the purchaser knew the land was part of the homestead of "Mrs. Breland and her husband, who was living at the time of the

conveyances, but who failed to join in said conveyance to appellee Parker", and the Court said: "The fact that, in the conveyance of the Daughdrill tract to appellant by her husband, it was recited that the land conveyed constituted no part of the homestead of the grantor did not estop appellant Mrs. Breland from asserting her homestead rights in the land." The Court also pointed out: "As we have undertaken to show above, a complete answer to the contention of appellee Mathis as to the one hundred and twenty-acre tract is that appellee Parker got no title thereto by the conveyance of appellant Mrs. Breland of it to him, because at the time it constituted a part of the homestead of appellant and her husband, who was then living, but who failed to join in the conveyance. Under the law, a person purchasing an exempt homestead is affected with notice of exemption and with the knowledge of the law that it is necessary to a valid conveyance of a homestead that both husband and wife join in such conveyance. In that respect the purchaser acts at his peril. His good faith does not protect him. He should ascertain the facts and, if he fails to do so, must suffer the consequences."

The rule at the time the Rutherford case was decided on this point is expressed in 21 Cyc., Homesteads, p. 549, as follows:

"(b) Non-Joinder of Husband or Wife in Conveyance. On the principle that estoppel will not supply the want of power or make valid an act prohibited by express provisions of law, it is held in jurisdictions where a conveyance of the homestead is void without the joinder of husband and wife that the husband is not estopped by a deed, although founded upon a valuable consideration, nor by a mortgage of the homestead in which the wife does not join, and that the wife is likewise not estopped by a conveyance of encumbrance of the homestead in which she did not join. It has also

been held that no estoppel results against the wife from her executing a mortgage of the premises without her husband joining. * * *

"(c) * * * If the premises are openly and obviously used for residential purposes when the instrument in question is executed, a recital therein that the property is not a homestead, or an affidavit to that effect made to secure a loan, will not estop the party so representing from claiming the statutory exemption, so where the statute absolutely forbids encumbering of the homestead, no estoppel arises from the owner's declaration that it is not his homestead; and it has been held that a recital in an instrument other than that now relied upon to the effect that no homestead exists in the property will not be binding upon the homesteader who seeks to avoid the present instrument. * * *

"(d) * * * Usually the wife is not estopped by the acts of her husband in conveying the homestead or subjecting it to liability. Hence, if the husband represents to a mortgagee or grantee that no homestead rights exist in the property; or permits a judgment in ejectment for the premises to go against him in a suit in which the wife was not made a party; or recognizes and confirms the sale of the homestead * * * or recites in his deed that the consideration is the cancellation of purchase-money notes * * * or engages in any conduct which would estop him where he alone concerned, but in which his wife does not participate, the latter's rights remain unaffected. * * *"

Under the Annotation set out in 95 Am. St. Rep. 921, as to the effect of a conveyance or encumbrance of the homestead by one spouse, is also pointed out: "(a) * * * Title is often attempted to be passed through a deed by the husband alone by means of the doctrine of estoppel, but it is generally held such conveyance is void and does not operate against him as an estoppel, though founded on a valuable consideration: Halso v. Sea-

wright, 65 Ala. 431. So where one executed a mortgage of land, including his homestead, not then selected, as to which the instrument was void on account of the misjoinder of the wife in the manner required by law, it was held not to estop him from selecting the portion so mortgaged as his homestead. Marks v. Wilson, 115 Ala. 561, 22 So. 134. The conduct of the husband cannot operate as an estoppel against the wife, she being a stranger to such conduct: Gober v. Smith, (Tex. Civ. App.), 36 S. W. 910; and if the conveyance is to become valid by estoppel, such estoppel must operate as to both, as neither of them alone can give it validity: Law v. Butler, 44 Minn. 482, 47 N. W. 53.

"The applicability of the doctrine is well expressed in Cumps v. Kiyo, 104 Wis. 656, 81 N. W. 937, in these words: 'The policy of the statute indicated it not to give the wife a mere personal right for her personal benefit which she may waive, or be estopped by her conduct from insisting upon, but to protect the home for the benefit of the family and every member of it — a beneficent policy of the highest character, calling for a broad, liberal application of the statute, so as to carry it out, fully, in letter and spirit.' * * *".

It is well-settled that a covenant in a mortgage of the homestead executed by the husband alone cannot act as an estoppel against the mortgagor. Alt v. Banholzer, 39 Minn. 511, 12 Am. St. Rep. 681, 40 N. W. 830. In that case the Court said: "To work an estoppel the mortgage itself must be a valid instrument. The covenants can have no greater validity than the deed itself. It would nullify the statute to hold that a deed, which the law declares void, should, by reason of the covenants of the grantor, operate effectually as a conveyance."

This rule is distinguished by the foregoing authority with reference to excess land over the homestead in the following language: "While void as to the homestead, the husband's individual deed is generally con-

sidered good as to other property conveyed thereby, and the excess above the statutory amount passes.'' Citing Howell v. Bush, 54 Miss. 437; The State National Bank of Louisiana v. Lyons, 52 Miss. 181.

The estoppel rule has been commented on by Thompson on Homestead and Exemption Laws, Sec. 474, at p. 409, as follows: ''Where the statute provides that, in order to make a valid conveyance of the homestead, the wife of the owner must join in the deed, a conveyance of the homestead by the husband alone is held by most courts to be *void*, not only as to the wife, but also as to the husband. This being so, it estops neither from asserting the homestead right against the alienee. * * * Upon this principle a deed of the homestead not executed by the wife, in conformity with the statute, is void as to her. Nor can such a deed be permitted to operate as an estoppel against the husband, because it would be absurd to hold that a deed which the law declares to be invalid should yet, by reason of the covenants of the grantor, operate effectually as a grant, and transfer the estate.''

Thompson also points out under Sec. 511, at p. 436, in speaking of a Vermont statute, that: ''Since this statute, a deed or mortgage of the homestead, in which the wife does not join, is held absolutely void, the husband has no capacity to make such a deed, and the title to the estate remains as if no deed were executed. Such a deed being absolutely void, the grantor therein is not estopped by it from setting up a homestead interest in the premises conveyed; since it is an essential element of the doctrine of estoppel by deed that the deed itself which is claimed to work the estoppel should be a valid instrument.'' Cf. Robins v. McMillan, 26 Miss. 434; Stevenson's Heirs v. McReary, 12 S. & M. 9.

More recent authority may be found in 26 Am. Jur., Homestead, Sec. 211, p. 132, as follows: ''The wife may be entitled to assert the homestead right, although the

representations of the husband may have been such as to preclude him from so doing. Hence, in order that the defense of estoppel may be effectual, the circumstances must be conclusive against the right of the wife as well as of the husband. If there is no contention that the wife had knowledge or notice of the representations of the husband, a conclusion that she is estopped is not sustainable. She is not chargeable with knowledge which, on the part of her husband, precludes him from claiming the homestead right.''

In 26 Am. Jur., Homestead, Sec. 213.1, (New Text), 1962 Cumulative Supplement to Vol. 26, is found the following notation: ''Obviously, the answer to the questions as to whether, to what extent, and under what circumstances, a recital in a deed or mortgage disclaiming homestead as respects the property described, or affirming homestead in other property, may give rise to an estoppel against the assertion of inconsistent homestead rights, may depend, in part at least, upon the terms of the constitutional or statutory provision by which the right of homestead is given and regulated. For example, in a case which involved a mortgage by husband and wife, in which the mortgagors renounced all claims to the property as a homestead, and covenanted that it was not their homestead and that they did not claim it as such, it has been held that under a Constitution providing that 'the homestead of any resident of this state, who is a married man or head of a family, shall not be encumbered in any manner while owned by him' except for certain specified liens, any recitals, statements, stipulations, or covenants incorporated in a mortgage, which did not come within the specified exceptions, intended to prevent the pleading or proving of the fact that the mortgaged premises constituted such a homestead, were against the policy of the Constitution, and void. * * * And in a number of cases it has been held or stated that estoppel to assert home-

stead rights cannot be based solely upon recitals in the instrument which purports to create a lien on the homestead.

\* \* \*

"It seems to be well settled that where property is openly and visibly occupied as a home by persons having homestead rights therein, no estoppel against the assertion of such rights as against a mortgage or deed of trust given by them covering such property can arise from recitals therein disclaiming homestead in the property in question or affirming such rights in other property. \* \* \*"

The rule in the Rutherford case is also expressed in Sec. 213.1 of 26 Am. Jur., (New Text), 1962 Cumulative Supplement to Vol. 26, as follows: "It is a rule of universal application that a person cannot lawfully hold two homesteads at the same time. He may, however, occupy more than one piece of property in such a way as to entitle him to claim homestead rights in any one of them at the sacrifice of such rights in the others. Where this is the case, it is generally held that recitals in a mortgage or deed of trust covering one of such properties, disclaiming homestead rights therein, or designating another one as the mortgagor's or grantor's homestead, give rise to an estoppel against a subsequent assertion of homestead rights as against the mortgage or deed of trust."

An Annotation found in 128 A. L. R. 414, sets out the two rules, that is to say, effect of possession of more than one home, and effect of possession of more than the statutory acreage. The effect of the possession of more than one home is found on p. 422. The effect of possession of more than the statutory acreage begins on p. 424.

In the case of State, ex rel., Grigsby, County Attorney v. Stokes, et ux., 286 P. 4, the Court said: "It was conclusively shown, and it is practically conceded by

plaintiff, that at the time of the execution of the bond, and at all times subsequent thereto, such property was actually occupied as a homestead by the defendant. Attorneys for plaintiff seek to subject the premises to the operation of the execution, upon the ground of estoppel by conduct; that is, by reason of declarations in writing by the husband contained in the special qualifying clause on the bond, to which it is claimed the wife freely assented.'' The defendants defended on the ground that the property at all times was their homestead, and Mrs. Stokes did not sign the false statements as to the homestead character of the property and did not aid or abet or conspire with her husband to perpetrate the alleged fraudulent conduct. The Court said: ''A careful examination of the authorities will reveal the following defects in plaintiff's contention: Except in rare and under unusual circumstances, it is universally held that the principle of estoppel based upon representations, expressed or implied, or recitals that property is not a homestead, will not operate against the person so making these representations, where the property is in actual use as a homestead even when these representations, statements in writing and affidavits, are made by the husband or wife or both. 29 C. J., pp. 914, 915, and cases therein cited. * * * the rule is thus stated: '* * * On the other hand, where property is in actual use as a homestead, neither representations made by husband or wife or both, * * * will estop the party so representing from claiming the statutory exemption.' ''

In the case of Llewellyn, et ux. v. First National Bank of Lampasas, 265 S. W. 222 (Tex. Civ. App. 1924), the Court said: ''Where those having a homestead interest in property are physically occupying it and using it as a home, representation by them to the contrary, however solemnly made, are of no avail to defeat the homestead right. Estoppel is no defense in this character of cases. * * * A different rule obtains, however, where the

homestead property is not actually occupied as such at the time it is encumbered. So long as the property is actually occupied and used as a homestead, its homestead character cannot be divested by intention of the occupants.''

In the case of Fest, et al. v. Williams, et ux., 89 S. W. 2d 1072 (Tex. Civ. App.), the Court in that case said: ''In urging estoppel, appellant also relies upon the jury finding that at the time he procured the loan Williams represented to the lender that the San Antonio place was not his homestead. But the jury further found that the San Antonio place was in fact Williams' homestead at the time, that the Williamses were at that time actually, openly, visibly, and apparently occupying and using the place as the family homestead, and that the lender, and its assign, appellant Fest, had knowledge of such facts as would put a person of ordinary prudence upon inquiry of such use and occupancy, which inquiry, if pursued with reasonable diligence, would have disclosed the true facts, but that the lender and appellant failed to use such diligence. These findings bring the case within the well-established rule that estoppel, in homestead cases, is not available to a person asserting that defense upon the owner's statement that the mortgaged property is not his homestead, where the property was in fact the homestead at the time, and where it appears that inquiry from the mortgagee's part would have disclosed the homestead character of the property.'' See also the following cases to the same effect: Lloyd v. Christian, 54 S. W. 2d 197 (Tex. Civ. App. 1932); Weiser v. Travis Cotton Seed Products Co.; 63 S. W. 2d 246 (Tex. Civ. App. 1933); Balcomb v. Vasquez, 241 S. W. 2d 650 (Tex. Civ. App. 1951); Higgins v. Millsap, et ux., 121 S. W. 2d 469 (Tex. Civ. App. 1938); Cumps v. Kiyo, et ux., 104 Wis. 656, 80 N. W. 937 (S. Ct. (Wis. 1899).

## HOMESTEAD SHOWN BY EVIDENCE.

This Court has held that where property is conveyed by one spouse without the signature of the other, testimony may be introduced to establish the fact that the land conveyed was in fact a homestead and therefore the conveyance was void. See Ethridge v. Webb, 204 Miss. 159, 37 So. 2d 168. In the case of Hinds v. Morgan, 75 Miss. 509, 23 So. 35, this Court said: "As to the declarations alleged in the bill and shown in the depositions of Mr. Jayne and Mr. Watson to have been made by the appellant, to the effect that he had no homestead in his lands, it is to be said that his rights are dependent not upon any mistaken, or even false, statement of his, made at the time of borrowing the money, but upon 'the facts of appellant being the head of a family and residing upon the premises as a home.' If the statements of the husband, of the character shown here, can defeat the homestead claim, then, in every case, what could not be done directly might be done by indirection, and the beneficent public policy of our law be utterly frustrated, and innocent families be turned out upon the world, homeless and faultless. There is no hint that the wife practiced any fraud, or attempted to do so."

In the case of Hughes v. Hand, 209 Miss. 293, 46 So. 2d 587, a married man without the signature of his wife purported to convey farm land on which he and his wife resided. The conveyance was void, and the execution and acknowledgment of a deed by the widow after his death was ineffective to validate such a conveyance. This Court, speaking through Judge McGehee, said: "We are therefore of the opinion that the decree of the trial court in dismissing the bill for partition was erroneous as to 160 acres of land, and that the cause should be reversed and remanded in order that it *may be determined* what portion of the land should be set

apart as the homestead and subject to partition." (Emphasis supplied.)

It was also pointed out by the Court in the case of Cummings v. Busby, et ux., 62 Miss. 195, that the conditions existing at the time of the execution of the instrument determined its validity or invalidity, and the invalidity of a deed of trust on a homestead could not be cured by subsequent events, namely abandonment.

It seems to be the universal rule, as pointed out in 40 C. J. S., Homesteads, Sec. 199, p. 686, that "Usually the question as to estoppel to claim a homestead is one of fact for the jury. Conflicting evidence as to whether certain representations relied on as a basis of estoppel were made precludes the determination, as a matter of law, whether there is an estoppel and raises an issue of fact, which is to be determined by the jury or by the court in a case tried by the court without a jury."

I am therefore driven to the conclusion that evidence may be introduced in a trial where a conveyance has been made in which the grantor has disclaimed homestead interest, to show that the property described was in fact the homestead of the grantor. Moreover, it may be well to point out that the burden of proof is upon one who denies the claim of a homestead right and asserts such right is lost by estoppel. See 40 C. J. S. 672, Sec. 196.

How then, does the language disclaiming homestead rights in a conveyance affect the right of the exemptionist to assert the claim of homestead protection in lands actually occupied as a homestead, and not signed by the wife?

In the case of Parker v. Schrimsher, 172 S. W. 165 (Tex. Civ. App. 1914), where a declaration in the deed of trust executed by the husband alone stated that the property was not homestead property might be admissible in evidence as an admission of the husband that gives his interest tending to show that in fact the prop-

erty was not the homestead. This is also said to be the Mississippi rule in VI. Recitals as evidence, 128 A. L. R. 426: "And the same view was expressed in Kyle v. Peoples Bank & T. Co. (1939) 186 Miss. 287, 187 So. 534, regarding a stipulation in a trust deed executed by a married man without joining his wife that the land covered constituted no part of the homestead."

In the Kyle case, this Court pointed out that the question as to whether or not the forty acres described in the conveyance was actually a part of the home was one of fact, and said: "There was evidence for and against the claim that the 40 acres was used and occupied as a part of the homestead. The chancellor found that it was not, and we think he was justified in so finding from the evidence. It is true, as argued on behalf of Kyle, that the stipulation in the deeds of trust that the 40 acres was no part of the homestead was not binding on him, nevertheless, it was a declaration against interest, which the chancellor should have considered, and doubtless did consider, along with the other evidence in determining the question." See also Breland v. Parker, 150 Miss. 476, 116 So. 879 (1928).

In the case of Thompson v. Dyess, 218 Miss. 770, 67 So. 2d 723, this Court held that a timber deed which was not signed by grantor's wife was void as to their homestead, and that deceased grantor's heir was entitled to enjoin removal of the timber from the homestead. This Court pointed out in the opinion that the wife was not estopped to claim the protection of the homestead law, although she had enjoyed the use of the purchase price thereof. The Court said: "The record supports the finding that the evidence was insufficient to show specifically which 160 acres out of the entire 380 acres constituted the homestead. But this failure did not entitle appellee to a decree of dismissal. In fact, since Edd Vaughn had not made a selection of homestead in accordance with the statutory

provisions, it would have been improper for the court to have undertaken to designate the specific 160 acres constituting the homestead. The correct course is defined in Bruce Company v. Spears, 181 Miss. 786, 181 So. 333, 335, a case almost identical with the present case on this point. In that case, the trial court allotted homestead as prayed by Spears and his wife, and invalidated the timber deed, not signed by the wife, as to the 160 acres so designated, out of the entire tract of 424 acres.''

It seems to me that we are obliged to follow the Thompson case, supra, particularly since it is a well-established rule in this State that the homestead right is favored by law and homestead laws should be liberally construed, and where there is serious doubt as to whether the property is a homestead, it should be resolved in favor of the exemptionist. Levis-Zukoski Mer. Company v. McIntire, supra; Mounger v. Gandy, 110 Miss. 133, 69 So. 817; Jackson v. Coleman, 115 Miss. 535, 76 So. 545; Dogan, Sheriff v. Cooley, 184 Miss. 106, 185 So. 783; Daily v. City of Gulfport, 212 Miss. 361, 54 So. 2d 485.

I am therefore of the opinion that the language disclaiming any homestead interest mentioned in the two deeds involved in this case is nothing more than a statement against the interest of the grantor, and could be properly considered along with the other evidence, by the chancellor, in determining whether or not the land described in the two deeds was, as a matter of fact, a part of the homestead actually occupied and used by the exemptionist at the time these deeds were made. Cf. Lee v. Duncan, 220 Miss. 234, 70 So. 2d 615.

The chancellor determined that the property described in the deeds was a part of the homestead of the grantor at the time of the conveyance and since the wife did not sign the deeds, the deeds were void. We have often held that the finding of the chancellor on

a question of fact will not be disturbed unless manifestly wrong; and, therefore I am of the opinion that the judgment of the chancery court should be affirmed.

*Lee and Kyle, JJ.,* join in this dissent.