# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-01551-SCT

*PATRICIA A. BURR, BASCOM RAY BURR, JR. AND
ANGELA BURR MOORE*

**v.**

*MISSISSIPPI BAPTIST MEDICAL CENTER*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/23/2002 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GLENN S. SWARTZFAGER |
| | WILLIAM L. WALLER, SR. |
| ATTORNEYS FOR APPELLEE: | MARTIN R. JELLIFFE |
| | EUGENE R.NAYLOR |
| | BRENDA CURRIE JONES |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 06/16/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.

### DICKINSON, JUSTICE, FOR THE COURT:

¶1. In this wrongful death lawsuit, the plaintiffs allege a hospital rendered substandard care to a patient. The jury returned a verdict for the defendant hospital, and the trial court entered judgment accordingly. The plaintiffs appealed. We affirm.

### BACKGROUND FACTS AND PROCEEDINGS

¶2. Ray and Patricia Burr were both transported to Mississippi Baptist Medical Center (the Hospital) in Jackson for emergency medical treatment after they sustained serious injuries in

a three-car collision on November 8, 1998. Two days later, Patricia Burr was released to go home, and Ray was transferred from ICU to a post-surgery recovery floor.

¶3.     After beginning a clear liquids diet on the 13th, Ray began to complain of nausea. As allowed per the treating physician's standing order, the nurses administered two injections of Phenergan[1] on the 13th, three on the 14th, and one on the 15th. On the morning of the 15th, Ray vomited and, about two hours later, went into respiratory-cardio arrest, after which he had "no meaningful neurologic existence" until his death on July 15, 1999.

¶4.     Ray's widow, Patricia, and their two children, Bascom Ray Burr, Jr. and Angela Burr Moore (collectively the Burrs) brought suit against the Hospital in Hinds County Circuit Court, claiming that the hospital was responsible for the nurses' negligence which led to Ray's vomiting which, in turn, resulted in aspiration pneumonia from which he eventually died.

¶5.     The Burrs and the Hospital filed several pretrial motions including motions in limine.[2] However, only two of the motions in limine concern this appeal; one related to the facts of the automobile wreck and the other related to medicare or social security issues.

¶6.     At the conclusion of a week-long trial the jury returned a verdict in favor of the Hospital, and the circuit court entered judgment. From this judgment, the Burrs timely appealed, alleging the following five errors: (1) improper and/or prejudicial closing argument

---

[1]Phenergan is a drug used for treating nausea.

[2] Pointing out that this suit was the second wrongful death lawsuit filed by the Burrs, the Hospital, filed a motion for summary judgment. The trial court properly dismissed the Hospital's motion because the prior suit was settled out of court with no jury determination of the merits. *See* Miss. Code Ann. § 11-7-13 ( "there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action *unless it be decided on its merits.*") (emphasis added).

2

by the defense; (2) improper jury instructions; (3) improper references to Medicare and the underlying facts of the automobile accident elicited during trial testimony; (4) a verdict that was against the overwhelming weight of the evidence; and 5) the cumulative effect of the errors.

## ANALYSIS

### I.    Hospital's Closing Argument

¶7.    In *Eckman v. Moore,* 876 So.2d 975, 994 (Miss. 2004), we summarized the standard of review for closing arguments:

> Attorneys have wide latitude in closing arguments. Notwithstanding the wide latitude afforded in closing arguments "[t]he standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice . . . so as to result in a decision influenced by the prejudice so created." This Court has held that "any alleged improper comment must be viewed in context, taking the circumstances of the case into consideration." The trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect.

(citations omitted).    As such, we reverse only where a trial judge abuses his or her discretion in overruling the contemporaneous objection raised by opposing counsel.

¶8.    The plaintiffs complain about these statements at the beginning of the Hospital's closing argument:

> MR. NAYLOR (counsel for Hospital):  Good afternoon.  You have been terribly patient this week.  You were told on Monday that this was going to be a simple case, yet you find yourselves here on Friday afternoon.  Mr. Waller gave you this presentation and he tells you about the Baptist Hospital.  He tells you it's a sole corporation.  Ladies and gentlemen, it's not.  Baptist Hospital was established as an outreach of the Mississippi Baptist Convention, a not-for-profit corporation.  But more importantly –

3

MR. WALLER (counsel for Burrs): That's not in evidence, Your Honor, and we object to commenting outside the evidence.

THE COURT: Overruled.

MR. NAYLOR: More importantly, Baptist Hospital is not just an outreach of the Baptist Convention that provides Christian care. It is people like Ms. Gloria Bell who provide professional care.

Mr. WALLER: This is not proper argument, Your Honor. They admitted in their instructions it's a commercial corporation.

THE COURT: Overruled.

¶9. Since "any alleged improper comment must be viewed in context, taking the circumstances of the case into consideration," this Court must look at the trial as a whole, including all comments from both the Burrs and the Hospital in determining whether a statement has created an unjust prejudice. *Haggerty v. Foster*, 838 So.2d 948, 961 (Miss. 2002). The record reveals that counsel for the Burrs made several comments regarding the corporate status of the Hospital. For example, in voir dire, the Burrs' counsel twice commented on the Hospital's corporate status:

> There is one defendant and that is the Baptist Hospital. They are a Mississippi corporation operating like the telephone company or any other corporation. It is not a church, and as far as I know, they have no church affiliation ... There is no connection between your church and the Baptist hospital. It is an independent organization. The Baptist hospital is a corporation. General Motors is a corporation. So we can't confuse the Baptist hospital with the Baptist church."

In his closing arguments, the Burrs' counsel provided the following comments regarding the hospital:

> They're not connected with the church. They're just like General Motors. [Objection by hospital is overruled.] The judge said what I said is proper. The hospital is just like General Motors ... They are a company doing business for profit just like a grocery store, just like a service station, just like Wal-mart.

4

¶10. Thus, the record clearly establishes that the Burrs' counsel opened the door for comment by the Hospital's counsel regarding corporate status. Furthermore, having reviewed the trial record and transcript, we note that the Burrs failed to make a contemporaneous objection at trial as to any alleged prejudicial effect of the statements.[3] The Burrs' only objection was that the statement went outside the record. Thus, having not been raised at trial, any error as to prejudice is deemed waived. Even if objection based upon prejudice had not been waived, we find the statements fall far short of reversible error.

¶11. The excerpts cited above are the only references in a six-volume trial transcript to the Hospital's status as a corporation. The comments were made only after counsel for the Burrs attempted to align the Hospital with other non-religiously affiliated, for-profit corporations. It is highly unlikely that these scant references to the corporate status of the Hospital prejudiced the jury in any way against the Burrs. For the reasons stated, the Hospital's closing argument cannot serve as grounds for reversal.

## II. Jury Instructions

¶12. The Burrs assert that two jury instructions were improperly given. They allege instruction 18 lacked evidentiary support while instruction 9 was erroneous as a matter of law. The proper standard of review for jury instructions is:

> [T]he instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case. However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case.

---

[3]The first mention of the prejudicial effect of the Hospital's statements was in the Burr's motion for judgment notwithstanding the verdict, or for a new trial.

*Nunnally v. R.J. Reynolds Tobacco Co.,* 869 So.2d 373, 378 (Miss. 2004) (citations omitted).

*Jury Instruction #18*

¶13.    Jury Instruction 18 reads as follows:

> You are instructed by the Court that Dr. Scott Berry was Bascom Burr's treating physician. You are further instructed by the Court that Mississippi Baptist Medical Center cannot and does not practice medicine as a matter of law. You are further instructed that Mississippi Baptist Medical Center is not responsible or liable for the independent medical treatment provided by Dr. Berry or any results of his decisions, not to order care or treatment for Bascom Burr, Sr., while he was a patient at Mississippi Baptist Medical Center, and should you find from the evidence that Bascom Burr, Sr.'s death was the result of independent medical treatment provided or not provided by Dr. Berry to Bascom Ray Burr, Sr. while he was a patient at Mississippi Baptist Medical Center, then your verdict must be for the defendant, Mississippi Baptist Medical Center.

The Burrs allege that the factual basis assumed by this instruction is not supported in the record.

¶14.    We have consistently held that the defense is entitled to jury instructions which present its theory of the case, if supported in the evidence. *See Nunnally,* 869 So.2d at 378; *Splain v. Hines*, 609 So.2d 1234, 1239 (Miss. 1992); *Purina Mills, Inc. v. Moak,* 575 So.2d 993, 996 (Miss. 1990).

¶15.    Contrary to the Burrs' assertion, the record contains evidentiary support for this instruction. Nurse Gloria Bell paged Dr. Berry around 7:00 a.m., just after Ray Burr vomited. Dr. Berry testified that he received the page but failed to answer it because he was already on his way to the Hospital. When he got to the Hospital, he went first to check on the ICU where

he received a second page from Nurse Bell.[4] He received his third page from Nurse Bell as he was walking onto the floor at least forty-five minutes after receiving the first page. At this point, Nurse Bell informed him of Burr's condition, and Dr. Berry decided to transfer him to ICU.

¶16. At 8:20 a.m., Dr. Berry had been with Burr for thirty to forty minutes when Burr coded. Dr. Berry called a "Code 99" and attempted to intubate him. When the Hospital cross-examined the Burrs' expert, Dr. William Stuart, he admitted, "I think if he's [Burr is] intubated when Dr. Berry gets there and he's talking, he's going to be okay. But once he's not talking and he's intubated, he's probably not going to talk again." Further, Dr. Stuart stated that, "if he had been intubated ten minutes earlier, within a reasonable degree of medical certainty, he would not have suffered the anoxic brain damage that he had and he would have had a meaningful recovery." Therefore, the Burrs' own expert established that if Burr had been treated ten minutes sooner, he would likely have recovered. Dr. Berry was with Mr. Burr at least thirty minutes before the decision to intubate was made.

¶17. Although we in no way conclude or intend to insinuate that Dr. Berry was negligent, we cannot say that evidentiary support for this instruction was lacking. The jury could have concluded that Dr. Berry should not have waited forty-five minutes after being paged before checking with Nurse Bell about the reason for the page. The record supports a finding that, had intubation occurred just ten minutes earlier, a meaningful recovery was likely. The jury was free to conclude from this evidence that Dr. Berry's actions – and not the Hospital's – led to

---

[4]Although Burr's condition had yet to change, Nurse Bell paged Dr. Berry a second time when he failed to respond to the first page.

Burr's death.   Since credible evidence exists in the record supporting this instruction, the trial judge did not err in giving jury instruction 18.

*Jury Instruction #9*

¶18.    Jury instruction 9 reads as follows:

> You are instructed by the Court that the word "negligence" as used in the instructions of the Court means the doing of something that a person of ordinary prudence would not have done under the same or similar circumstances, or the failure to do something which a person of ordinary prudence would have done under the same or similar circumstances.

This instruction was proposed as D-12.   The Burrs had proposed, as P-4, the following "negligence" instruction:

> "Negligence" in these instructions means that the employees of Baptist Medical Center failed to exercise such reasonable care for Mr. Burr as his known physical condition required.   Negligence may consist either in doing something that a reasonably careful person would not have done under like or similar circumstances, or failing to do something that a reasonably careful person would do under like or similar circumstances.

¶19.    The Burrs allege that by accepting D-12 and rejecting P-4, the trial court, as a matter of law, erroneously instructed the jury as to the definition of negligence.   A proper instruction, they assert, would have, stated that "[t]he standard of care applicable in cases of alleged negligent conduct is whether the party charged with negligence acted as *a reasonable and prudent person* would have under the same or similar circumstances." ***Donald v. Amoco Prod. Co.,*** 735 So.2d 161, 175 (Miss. 1999) (emphasis added).

¶20.    The ***Donald*** instruction employs the term, "a reasonable and prudent person."   P-4 (the Burrs proposed instruction) refers to "a reasonably *careful* person," and D-12 (the instruction actually given) employed "a person of *ordinary prudence*."

8

¶21.   The Burrs claim that the trial court's use of "a person of ordinary prudence" was erroneous as a matter of law because the phrase changes the entire context of the definition of negligence.  In other words, the Burrs assert that there is a difference between "a reasonably prudent person" and "a person of ordinary prudence."  However, they fail to describe the difference.  "A person of ordinary prudence" has been accepted by this Court on several prior occasions as a proper standard-of-care definition.  *See Harper v. Harper*, 491 So.2d 189 (Miss. 1986); *Turney v. Marion County Bd. of Educ*., 481 So.2d 770 (Miss. 1985); *Bd. of Trustees, Utica Junior College v. Lee Elec. Co.*, 198 So.2d 231 (Miss. 1967); *Biglane v. Rawls,* 247 Miss. 226, 153 So.2d 665 (1963).  The Burrs have failed to note a single case where "a person of ordinary prudence" has been held to evoke a standard of care that differs from that of "a reasonable and prudent person."  This Court finds no error in the use of "a person of ordinary prudence" in the jury instruction defining negligence.

### III.   Trial Testimony

¶22.   The Burrs claim that the trial court erred in allowing defense counsel to elicit testimony during the trial on the existence of Medicare and the underlying facts of the automobile accident.  "Determining the relevancy and admissibility of evidence is within the discretion of the trial judge, and we will reverse only in the event that discretion has been abused." *Abrams v. Marlin Firearms Co.,* 838 So.2d 975, 979 (Miss. 2003).

*References to Medicare*

¶23.   For evidentiary purposes, Mississippi follows the collateral source rule. However,

> [t]he collateral source rule in Mississippi provides that "[c]ompensation or indemnity for the loss received by plaintiff from a collateral source, wholly

9

independent of the wrongdoer, as from insurance, cannot be set up by the [defendant] <u>in mitigation or reduction of damages</u>."

***Busick v. St. John,*** 856 So.2d 304, 309 (Miss. 2003) (emphasis added).

¶24.    The Hospital filed a motion in limine "to preclude mention of or reference to Medicare or Social Security medical payment issues during the trial of this matter."  Further, the Hospital asked the trial court to prohibit the Burrs' counsel and witnesses from mentioning "Bascom Burr, Sr.'s financial status, Medicare, Social Security reimbursement or any issue concerning payment as such would be asserted to have had any affect whatsoever on the care provided to Bascom Burr while a patient at [Hospital]."  In ruling on this motion, the trial judge said, "the Plaintiff certainly can offer testimony that Mr. Burr was on Medicare but in other aspects of the motion, that motion is granted."

¶25.    On direct examination, Patricia Burr testified that her husband received $980 a month from his disability social security and later referenced that he was on Medicare.  On cross-examination, she admitted that at her deposition she asserted that his monthly Social Security check was $921 and after his Medicare insurance premium was subtracted, he received $868 a month.  The Burrs' counsel raised the issue of Social Security disability to establish loss of income which was a portion of their claim for damages.  The Hospital was entitled to cross-examine Patricia Burr on the net amount of her husband's monthly Social Security check, particularly given that her direct testimony differed from her deposition testimony.

¶26.    None of the attorneys or witnesses discussed which particular bills Medicare paid, and the Hospital made no attempt to persuade the jury that payments from Medicare should serve to reduce the amount of damages awarded.  Consequently, the collateral source rule does not

apply. Additionally, since Patricia Burr mentioned Medicare in her direct testimony and the only use of Medicare in the Hospital's cross examination was to clear up the amount of lost monthly income, the trial judge did not abuse his discretion in allowing this testimony.

*Reference to facts of the accident*

¶27. In their motion in limine, the Burrs asked the trial court to prohibit the Hospital from using

> any facts regarding the automobile accident or the subsequent recovery of money either in voir dire, opening statements, questions of the witnesses including the individual plaintiffs herein, and to avoid any reference or placing of blame for the decedent's death on the injuries which he received in the automobile collision.

In ruling on this motion, the trial judge concluded that

> the fact that Mr. Burr was involved in an accident would be relevant but there are some limitations that the Court will place on that matter. So at this time the Court will only allow to be mentioned to the jury that Mr. Burr was involved in an automobile accident and before going into it any further, that matter needs to be raised with the Court.

¶28. During the cross-examination of Patricia Burr, the Hospital tried on two occasions to delve into the automobile accident. On both occasions, the trial judge excluded the jury and heard a proffer of the testimony the Hospital sought to elicit. After the first proffer, the trial judge ruled that the Hospital could cross-examine Mrs. Burr on the cause of the accident and the surrounding circumstances but could not cross-examine her on the condition of any other victims from the wreck. The Hospital proceeded to question Mrs. Burr in the presence of the jury on the underlying facts of the collision, including the injuries she sustained.

¶29. After Mrs. Burr denied ever formally alleging that her husband died as a result of his injuries received in the car wreck, the trial court allowed a second proffer of cross-

11

examination on this subject. During this second proffer, the Hospital questioned Mrs. Burr on the lawsuit that was filed the previous year against the other drivers involved in the accident. Specifically, the Hospital questioned her regarding the settlement of the prior suit, the release and indemnity agreements that were signed by all plaintiffs involved in the present lawsuit, and the orders dismissing the earlier wrongful death suit. After listening to the second proffer of testimony, the trial judge did not allow any cross-examination by the Hospital of Mrs. Burr in the presence of the jury concerning the prior lawsuit.

¶30. The trial judge did not abuse his discretion in allowing limited testimony on the seriousness of the car accident which directly resulted in Mr. Burr's hospitalization.

### IV.    Weight of the Evidence

¶31. When weighing whether a jury verdict is against the weight of the evidence, this Court

> show[s] great deference to the jury verdict by resolving all conflicts in the evidence and every permissible inference from the evidence in the appellee's favor. We will disturb a jury verdict on appeal only if it "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."

*Nunnally,* 869 So.2d at 378 (citations omitted).

¶32. Contrary to the Burrs' assertion, a review of the trial transcript reveals a sufficient basis for the jury's verdict. For example, a major component of the testimony of the Burrs' expert witness was based on the understanding that Mr. Burr was wearing a BIPAP mask, or bi-level positive airway pressure mask, when he vomited. Since a BIPAP mask forces oxygen back into the lungs, the Burrs' experts assert that after vomiting some of the vomit was forced back into his lungs by the BIPAP mask. However, the treating nurses testified that prior to vomiting Mr. Burr was wearing an oxygen mask, not a BIPAP mask, and that after he vomited

12

a nurse switched him to a nasal bi-prong which provided oxygen through the nose, rather than a mask of any type. Gloria Bell, a treating nurse, testified that a patient would not aspirate with a nasal bi-prong or a standard oxygen mask. Since conflicts in the evidence are to be resolved in the appellee's favor, a reasonable jury could have believed that Burr was not wearing a BIPAP mask when he vomited. This one issue undermines the Burr's position that "overwhelming evidence" established the hospital's liability.

¶33. The jury verdict is supported by other evidence as well. Burr received several shots of Phenergan for nausea prior to vomiting around 7:00 am on November 15. The previous four shots of Phenergan were given at 4:30 am on the 15th and 9:20 am, 5:00 am, and 1:00 am on the 14th. Therefore, almost nineteen hours had lapsed between the shot given on the morning of the 15th and the previous shot. A juror could certainly conclude that the Phenergan was working to control his nausea. According to Dr. LaDonna Northington, expert witness for the Hospital in the field of nursing, "[i]t was not until the patient had received Phenergan, the Phenergan no longer worked and the patient had an episode of vomiting did [the nurses] have to notify the physicians and that is what they did."

¶34. This is a complicated case alleging medical negligence. Evidence and reasonable theories supporting both sides were presented to the jury. As such, allowing the jury verdict to stand will not result in an unconscionable injustice. Thus, the verdict is not contrary to the weight of the evidence.

### V.    Cumulative Error

¶35. The only civil case cited by the Burrs under this assignment of error is *Estate of Hunter v. General Motors Corp.* 729 So.2d 1264, (Miss. 1999), where we held "[t]he cumulative

effect of the errors at the trial court below is sufficient to warrant a reversal and a remand for new trial...."*Id.* at 1279-80. In that case, this Court found several errors which independently required reversal. We have held "[t]he verdict of the jury is to be given great weight. No trial is free of error; however, to require reversal the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced." ***Busick,*** 856 So.2d at 308. We do not find in this case any cumulative error which prejudiced the Burrs.

**CONCLUSION**

¶36. Finding no reversible error by the trial court, we affirm the judgment of the Hinds County Circuit Court.

¶37. **AFFIRMED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. WALLER, P.J., AND DIAZ, J., NOT PARTICIPATING.**